■ BINGHAMTON MASONIC TEMPLE, INC., Plaintiff, v CITY OF BINGHAMTON, Defendant and Third-Party Plaintiff-Appellant. WILLIAM T. WHITMAN et al., Third-Party Defendants-Respondents. [623 NYS2d 357] —Yesawich Jr., J. Appeal from an order of the Supreme Court (Rose, J.), entered November 10, 1993 in Broome County, which granted third-party defendants' motion for summary judgment dismissing the third-party complaint.

In 1985, plaintiff retained the services of third-party defendant Eugene S. Beautz, an architect, to conduct a preliminary study of the feasibility of renovating plaintiff's temple building in the City of Binghamton, Broome County. After determining that the project was practicable, plaintiff entered into a comprehensive agreement with Beautz, by the terms of which the latter was to provide further architectural services in connection with the detailed planning and execution of the renovation. At some point, plaintiff's president, third-party defendant William T. Whitman, orally agreed to serve as general contractor for the project without remuneration, ostensibly to decrease the cost of the renovation.

Prior to beginning actual construction, and on the basis of Beautz's projections of the construction cost ($1,655,000) and total cost (approximately $2 million) of the project, plaintiff arranged to obtain the necessary funding from several sources. In October 1987, one of those sources, defendant and third-party plaintiff, City of Binghamton (hereinafter the City), passed an ordinance authorizing a loan to plaintiff of $300,000, derived from Community Development Block Grant (hereinafter CDBG) funds *(see,* 42 USC § 5301 *et seq.).* The City

was also designated the local processing agent for a Federal rehabilitation loan (approved by the Department of Housing and Urban Development [hereinafter HUD]) totaling approximately $1,170,000. In August 1988, apparently at the request of HUD, plaintiff filed a second rehabilitation loan application, again incorporating the cost figures submitted by Beautz in 1987. In September 1988, Beautz provided plaintiff with a new and significantly higher estimate of the cost of construction, namely $3,017,000. The City contends that neither it nor HUD was apprised of this change at any time prior to 1990.

Construction was commenced in October 1988; disbursements were made from the HUD moneys beginning in December 1988 and from the CDBG funds beginning in January 1989. As the renovation progressed, delays and cost overruns occurred, and some, but not all, of the resulting increase in cost was reflected in the forms plaintiff submitted to the City requesting loan advances, which were prepared by Whitman as general contractor and certified by Beautz.

In 1990, with construction approximately 85% complete, plaintiff and the City became involved in a dispute over certain low-income housing requirements and, as a result, the City failed to tender payment of approximately $35,000 of the CDBG funds that were allegedly due pursuant to its loan agreement with plaintiff. Work on the project stopped and plaintiff commenced this action against the City for breach of contract. The City in turn filed a third-party complaint against Whitman and Beautz, seeking indemnification, contribution and recovery as a third-party beneficiary of their contracts with plaintiff, and charging each with negligence. The third-party action was severed from the main claim, and the latter proceeded to trial, after which a jury found that the City had unjustifiably breached its loan agreement with plaintiff.

Supreme Court thereafter entertained, and converted to summary judgment (see, CPLR 3211 [c]), motions made by third-party defendants for dismissal of the third-party action, and found the City's third-party claims lacking in merit. The City's appeal of the resulting order is limited, by its brief, to the issues of third-party defendants' liability for negligent misrepresentation and the City's status as an intended third-party beneficiary of their contracts with plaintiff.

In essence, the City contends that third-party defendants were negligent in failing to inform the City that Beautz's original cost estimate for the project was substantially below the actual projected cost, in submitting change orders without

notifying the City or obtaining HUD approval, and in certifying and submitting inaccurate and misleading applications for the advance of loan funds, and that these derelictions caused eventual derailment of the project. Supreme Court found, and we agree, that these negligent misrepresentation claims are unavailing, for third-party defendants were not in contractual privity with the City, nor has the City demonstrated that its relationships with third-party defendants were such that recovery is warranted even in the absence of privity *(see, Security Pac. Bus. Credit v Peat Marwick Main & Co.,* 79 NY2d 695, 702-703; *Ossining Union Free School Dist. v Anderson LaRocca Anderson,* 73 NY2d 417, 424-425; *Credit Alliance Corp. v Andersen & Co.,* 65 NY2d 536, 551).

Significantly, the City has failed to present proof sufficient to support an inference that a primary purpose of Beautz's initial cost estimate—which was furnished before the City was even involved as a potential source of financing—was to affect the City's actions, that is, to induce it to make a loan to plaintiff *(see, Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood,* 80 NY2d 377, 383; *Glanzer v Shepard,* 233 NY 236, 239), or that Beautz did anything prior to the granting of the loan, or disbursement by the City of its funds, that would evidence an understanding that he was furnishing services to the City or for the purpose of influencing its actions. Although the City's counsel asserts "that [Beautz] agreed to do cost estimates *for [the City],* keep it advised of changes * * * and certify applications *to it"* (emphasis supplied), these assertions are not borne out by the record. While the City relies on Beautz's participation in meetings and his direct correspondence with City officials to demonstrate the requisite relationship, the bulk of these activities did not occur until after the City's breach in 1990 and, accordingly, cannot form the predicate for a finding that Beautz had assumed any duty of care with respect to the accuracy of the information he made available to the City at the time the claimed misrepresentations were made.

Nor has the City proferred any evidence that suggests that Beautz was aware, during the loan application process or when disbursements were being made, that the City was relying on him to provide information directly to it. Although Beautz may well have been cognizant that plaintiff had a duty to inform its lenders of change orders and cost escalations, there is no indication that he was advised that this was his responsibility or, more importantly, accepted it as such. Plainly, Beautz was not retained with the aim of providing

information to the City, or to any other lender *(compare, Ossining Union Free School Dist. v Anderson LaRocca Anderson,* 73 NY2d 417, 425, *supra);* he supplied the cost estimates to plaintiff, in accordance with his contractual obligation to do so, to assist it in planning and accomplishing the renovation of the facility, and while review of the figures by a lender may have been contemplated, that was at most an incidental consequence of Beautz's provision of services pursuant to his contract *(see, Security Pac. Bus. Credit v Peat Marwick Main & Co.,* 79 NY2d 695, 707, *supra).* It is also noteworthy that the contract with plaintiff makes no mention of the City or any other lender *(see, supra,* at 706). In these circumstances, the fact that Beautz forwarded a copy of one of his bills for services rendered to plaintiff and by it, to the City for payment, received a check drawn from the HUD loan proceeds in satisfaction thereof, and attended meetings, along with plaintiff, at which the loan applications were discussed, does not manifest a relationship with the City that is the "functional equivalent of contractual privity" *(Ossining Union Free School Dist. v Anderson LaRocca Anderson, supra,* at 419).

As for Whitman, while he was involved more directly in the loan application process and participated in regular communication with the City throughout the funding and aborted construction of the project, there is no evidence that he did so in his role as general contractor, rather than as plaintiff's president. Moreover, while Whitman signed the "application and certificate for payment" forms as contractor, the certifications contained therein were addressed to plaintiff, as the owner of the project, and would have been forwarded to the City by the owner; consequently, it would appear that any claim that this information was faulty would be properly directed to plaintiff. The City is unable to point to any specific representation made to it by Whitman, in his capacity as general contractor, upon which it relied to its detriment, nor to any conduct on Whitman's part which betokens an understanding that he had a duty, in his role as contractor, to supply the City with information about project finances.

The third-party claim for breach of contract is also ineffectual. A third party may recover as an intended beneficiary of a contract between others only if it is clear that the parties purposed to confer a benefit on that third party; furthermore, that benefit must be more than merely incidental to the benefits afforded the contracting parties, it must be such as to evince an intent to permit enforcement by the third party *(see, Fourth Ocean Putnam Corp. v Interstate Wrecking Co.,* 66

NY2d 38, 44-45; *Burns Jackson Miller Summit & Spitzer v Lindner,* 59 NY2d 314, 336), and the best evidence of this is to be found in the language of the contract itself *(see, Nepco Forged Prods. v Consolidated Edison Co.,* 99 AD2d 508). Here, it is clear that third-party defendants' provision of services to plaintiff was primarily designed to benefit the latter, by contributing to the completion of the renovation project, and that any benefit accruing to the City was incidental. Even if only those services rendered in connection with the procurement of financing are considered, the primary goal of third-party defendants' activities in this regard was obviously to assist plaintiff in obtaining the funds necessary for its project, not to protect or aid the City in connection with its duties as administrator of those funds.

Mikoll, J. P., Crew III, White and Casey, JJ., concur. Ordered that the order is affirmed, with one bill of costs.