Frankie H. CHU and Karen Chu, Plaintiffs,

v.

**DUNKIN' DONUTS INCORPORATED, et al., Defendants.**

No. CV 97–4182.

United States District Court, E.D. New York.

Nov. 16, 1998.

Frankie H. Chu, New York, NY, for pro se.

O'Rourke & Degen by Ronald D. Degen, New York, NY, Schmeltzer, Aptaker & Shepard, P.C. by Robert L. Zisk, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Presently before the Court is defendant Dunkin' Donuts, Incorporated's ("Dunkin'") motion for summary judgment in this contract case brought under the Court's diversity jurisdiction. For the reasons that follow, defendants' motion is GRANTED.

## BACKGROUND

The facts of this matter are not complicated. There is a Dunkin' Donut shop at 595 Franklin Avenue, Franklin Square, New York. It was once operated by X.M. Hu, Y.S. Lin, and the H.L. Frank Corporation (collectively the "Former Franchisees"). The Former Franchisees were sued by Dunkin' for reasons not pertinent here. The Former Franchisees and Dunkin' settled that suit and executed a settlement agreement by which the Former Franchisees agreed to transfer the franchise "to a transferee approved by Dunkin'." In turn, Dunkin' covenanted with the Former Franchisees that it would not unreasonably withhold such approval and would consider the proposed transferee under the same criteria utilized by them to qualify any prospective purchaser of a Dunkin' franchise. The settlement agreement contemplated that a prospective transferee might not be approved by Dunkin', in which case the Former Franchisees would have an additional three months in which to effect a transfer.

Plaintiffs Frankie and Karen Chu hoped to become the transferees. They executed a Purchase and Sale Agreement with the Former Franchisees to purchase the donut shop. Subsequently, plaintiffs applied to Dunkin' to become franchisees. Dunkin' administered a test, known as the Gallup Profile, to each plaintiff. The test is designed to evaluate

the potential successfulness of franchise applicants. Frankie Chu passed the test but Karen did not. Accordingly, Dunkin' rejected their application to become franchisees.

Frankie Chu then sent a letter to Dunkin' requesting reconsideration of the application, stating that he would be a "100% owner-operator-franchisee even without [his] wife as part owner." Because Dunkin' was aware that Frankie Chu conducted a full-time law practice in Manhattan and doubted he would leave his law practice to devote full time to the donut shop, Dunkin' declined to reconsider the application. The Former Franchisees eventually entered into a Purchase and Sale Agreement with another proposed transferee. Dunkin' approved that party, and the donut shop was duly transferred from the Former Franchisees.

## DISCUSSION

Plaintiffs advance four theories of relief: (1) a claim of tortious interference by Dunkin' with their attempt to purchase the donut shop from the Former Franchisees; (2) a claim that they were the intended third-party beneficiaries of the settlement agreement between Dunkin' and the Former Franchisees (and, therefore, may pursue a claim based on Dunkin's breach of the settlement agreement with the Former Franchisees); (3) a claim to enjoin the sale of the donut shop to a third party; and (4) a claim challenging the way in which Dunkin' deals with its franchisees. Each of these claims is without merit.

The rules governing the resolution of summary judgment motions are well known. Summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). No genuine issue of material fact exists if the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are only those that might affect the outcome of the lawsuit. Disputes concerning irrelevant or unnecessary facts cannot create issues of material fact. *Id.*

## Tortious Interference

The first claim raised by plaintiffs is that Dunkin' acted in a concerted effort to interfere with the Purchase and Sale Agreement executed by plaintiffs and the Former Franchisees, causing the Purchase and Sale Agreement not to be completed. Under New York law, the tort of intentional interference with the performance of a contract requires proof of the following elements: a valid contract between plaintiff and a third party; defendant's knowledge of the contract; defendant's intentional procurement of a breach by the third party; and resultant damages. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 646 N.Y.S.2d 76, 81, 668 N.E.2d 1370 (N.Y.1996); *Hoag v. Chancellor, Inc.*, 677 N.Y.S.2d 531, 533 (1st Dep't 1998).

Plaintiffs' claim clearly founders on the first and third elements. With respect to the third element, it is undisputed that the Purchase and Sale Agreement between plaintiffs and the Former Franchisees was expressly made subject to Dunkin's approval of plaintiffs as transferees. A cause of action for tortious interference with contract, however, does not lie where the only interference alleged is the defendant's refusal to approve a plaintiff's purchase application and that contingency is specifically contemplated in the contract of sale. *Levine v. Yokell*, 245 A.D.2d 138, 665 N.Y.S.2d 962, 962 (1st Dep't 1997); *see also Bellino Schwartz Padob Advertising, Inc. v. Solaris Mktg. Group, Inc.*, 222 A.D.2d 313, 635 N.Y.S.2d 587, 588 (1st Dep't 1995) (party exercising its contractual right of approval did not intentionally cause breach). Dunkin's exercise of its contractual right to approve proposed transferees is not an "interference" of the sort for which relief may be granted. Moreover, defendant did not cause the Former Franchisees to commit a breach of the Purchase and Sale Agreement—there was no breach by the Former Franchisees, who merely submitted the proposed contract to Dunkin' for its approval.

As for the first element, plaintiffs fail to demonstrate that they had a valid contractual relationship with the Former Franchisees, given that the contract of sale was contingent on Dunkin's approval. Upon execution of the

Purchase and Sale Agreement, what plaintiffs had in hand was nothing more than an expectation of contractual relations, not enough to raise a viable claim of tortious interference with contract. *See NBT Bancorp, Inc. v. Fleet/Norstar Fin. Group, Inc.,* 87 N.Y.2d 614, 641 N.Y.S.2d 581, 585, 664 N.E.2d 492 (N.Y.1996) (disappointed bidder in merger could not maintain suit against opposing bidder, alleging tortious interference with contractual relations between it and target corporation, where merger agreement between disappointed bidder and target company became effective only upon approval by target's shareholders; disappointed bidder had only an expectation of contractual relations).

■ Even generously construing plaintiffs' claim as one for interference with a prospective business relationship does not stave off dismissal. Absent proof of fraud, misrepresentation, threats of violence or other wrongful conduct, there is no liability for interfering with a potential business relationship. *See Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 428 N.Y.S.2d 628, 636, 406 N.E.2d 445 (N.Y.1980). Plaintiffs do not present such proof. Consequently, plaintiffs' first claim is dismissed.

*Third–Party Beneficiaries*

By virtue of the settlement agreement between Dunkin' and the Former Franchisees, the latter agreed to sell the donut shop and not unreasonably withhold approval to a prospective transferee. Plaintiffs' second claim is that they were third-party beneficiaries to the settlement agreement and Dunkin' breached the agreement by unreasonably withholding its approval.

■ "A third party may recover as an intended beneficiary of a contract between others only if it is clear that the parties proposed to confer a benefit on that third party; furthermore, that benefit must be more than merely incidental to the benefits afforded the contracting parties. It must be such as to evince an intent to permit enforcement by the third party." *Binghamton Masonic Temple, Inc. v. City of Binghamton,* 213 A.D.2d 742, 623 N.Y.S.2d 357, 360 (3d Dep't 1995) (relying upon *Fourth Ocean Put-nam Corp. v. Interstate Wrecking Co.,* 66 N.Y.2d 38, 495 N.Y.S.2d 1, 5, 485 N.E.2d 208 (N.Y.1985)). The best evidence of an intent to benefit a third party is to be found in the language of the contract itself. *Nepco Forged Prods., Inc. v. Consolidated Edison Co. of N.Y.,* 99 A.D.2d 508, 470 N.Y.S.2d 680, 681 (2d Dep't 1984).

■ The purpose of the settlement agreement was to bring an end to the litigation between Dunkin' and the Former Franchisees. There is nothing within the four corners of the settlement agreement evincing an intent to benefit Frankie or Karen Chu, nor do the surrounding circumstances indicate that any prospective transferee, let alone plaintiffs, was intended to benefit from the contract so as to have a right to enforce the contract against one of the contracting parties. Dunkin's covenant with the Former Franchisees not to unreasonably withhold approval was intended for the latter's benefit, rather than to the class of prospective transferees. Plaintiffs offer no evidence to suggest otherwise. Plaintiffs second claim is dismissed.

*Injunctive Relief*

Plaintiff's third claim seeks injunctive relief against Dunkin' to prevent it from interfering with the transfer of the store. However, on October 12, 1997, the Former Franchisees sold the donut shop to a third party approved by Dunkin.' Plaintiffs' third claim is moot and is dismissed.

*Unfair Trade Practice*

As their fourth claim, plaintiffs allege that Dunkin' conducts a fraudulent, unlawful, and unfair trade practice in its franchising business by using the approval procedure as a pretext for interfering with the sale of certain stores to third parties. In their brief opposing summary judgment, plaintiffs specify that they bring the claim pursuant to the New York Franchise Sales Act, N.Y.Gen. Bus.L. §§ 680–695 (McKinney 1996). Plaintiffs argue that because they are "intended beneficiaries of the Settlement Agreement, there are genuine triable issues of facts whether Dunkin' Donuts has committed

these types of fraudulent acts to the plaintiffs."

Plaintiffs' fourth claim fails for three reasons. First, plaintiffs have no cause of action under the Franchise Sales Act because they did not purchase a franchise from defendant. The statute provides that a franchisor's liability runs only to a "person purchasing the franchise." N.Y. Gen.Bus.L. § 691(1); *Olivieri v. McDonald's Corp.*, 678 F.Supp. 996, 1000 (E.D.N.Y.1988) (prospective franchisee rejected by franchisor has no cause of action under Franchise Sales Act). Second, plaintiffs are not intended beneficiaries of the settlement agreement, as they purport to be. Third, even if they had a statutory cause of action and were intended beneficiaries, they submit no evidence from which to conclude that Dunkin' engaged in any fraudulent practice with regard to the transfer of the donut shop. Dunkin' had a contractual right to approve its prospective franchisees and it chose not to deal with Frankie Chu. That may be a disappointment to plaintiffs, but there is no evidence from which to conclude that Dunkin's conduct rose to the level of fraud. Plaintiffs' fourth claim is dismissed.

## CONCLUSION

For the reasons stated above, plaintiffs' complaint is dismissed with prejudice. The Clerk of the Court is directed to close the case.

SO ORDERED.