■ CONFIDENCE TRANSPORATION, INC. et al., Respondents, v GEORGE A. BUCK, SR. et al., Defendants and Third-Party Plaintiffs-Appellants; R.K.B. ENTERPRISES, INC., Third-Party Defendant-Respondent. (Action No. 1.) R.K.B. ENTERPRISES, INC., Respondent, v GEORGE A. BUCK, SR., Defendant and Third-Party Plaintiff-Appellant; CONFIDENCE TRANSPORTATION, INC. et al., Third-Party Defendants-Respondents. (Action No. 2.) [630 NYS2d 804] —Peters, J. Appeal from that part of an order of the Supreme Court (Ellison, J.), entered September 30, 1994 in Chemung County, which, *inter alia*, partially denied various motions and cross motions made by certain parties in both actions.

R.K.B. Enterprises, Inc. (hereinafter RKB) is a corporation principally engaged in the wholesale hardware business which, prior to 1983, shipped its own goods by a private fleet of trucks. Richard B. Kimball, Robert W. Anderson and G. Dene Kimball (hereinafter collectively referred to as the RKB officers) are directors, officers and majority shareholders of RKB. In 1983, the RKB officers met with George Buck, Sr. (hereinafter Buck) to discuss the creation of a new trucking business, Confidence Transportation, Inc. (hereinafter CTI). The purpose of CTI would be to haul RKB's products as well as the goods of other businesses to obviate the need for RKB's private fleet. It was proposed that CTI would be owned by Buck and the RKB officers.

Upon agreement to form such corporation, Buck invested $5,000 and obtained 50% of the CTI stock as did the RKB officers, either individually or on behalf of RKB. All such investors became officers and directors of CTI. Buck alleges that in addition to regular salary, he was promised an annual amount equal to 25% of CTI's pretax income. It is undisputed that RKB provided all bookkeeping and accounting services for CTI and that during 1983 and most of 1984, RKB used CTI exclusively to haul its products. In September 1984, RKB determined that CTI would no longer carry its freight.

Buck alleges that during 1983 and 1984, RKB and the RKB officers took illegal rebates from CTI's profits. Due to these acts

and the ultimate loss of RKB as CTI's biggest customer, Buck alleges that CTI showed a loss for two years thereby creating substantial financial difficulty. The RKB officers maintain that CTI's financial troubles emanated from the actions of Buck and two other CTI employees who began operating a truck brokerage business, Twin Tier Transportation, Inc., which diverted profits from CTI.

As a result of the financial strain upon CTI, during December 1984 RKB and the RKB officers began negotiating a $200,000 loan with Chemical Bank to obtain "working capital" for CTI. Buck alleges that while he was asked to personally guarantee this loan along with the RKB officers, he was told that he was a secondary guarantor and that RKB, pursuant to its guarantee, would be primarily liable. The $200,000 was deposited into CTI's bank account and in January 1985, $150,000 thereof was withdrawn by RKB for reasons disputed by the parties. The balance of the loan amount was allegedly used to pay off certain leases that RKB had guaranteed on CTI's behalf.

In October 1985, Buck alleges that he loaned $20,000 to CTI that he claims was misrecorded by RKB personnel on the CTI books. RKB and the RKB officers eventually decided to liquidate CTI and on September 22, 1987, a corporate resolution so directed. At such time, there was an outstanding loan balance from Chemical Bank that was paid either by RKB or by the RKB officers. Buck alleges that RKB seized all assets of CTI, including accounts receivable, even though the Chemical Bank loan placed a first lien on the CTI assets. Hence, according to Buck, the CTI assets should have been sufficient to pay the Chemical Bank loan.

Action No. 1 was commenced by CTI and the RKB officers in June 1988 against Buck and two CTI employees, George Buck, Jr. and Lenny Flora (all three hereinafter collectively referred to as defendants), where it was alleged that Buck breached his fiduciary duties to CTI due to the operation of the separate truck brokerage business which undermined the financial stability of CTI. In the second cause of action, the RKB officers sought 50% contribution from Buck based upon their payment of the Chemical Bank loan. Defendants served an amended answer which denied liability and asserted various affirmative defenses and counterclaims. Defendants thereafter commenced a third-party action against RKB, later amended and supplemented to include a counterclaim against CTI. In September 1993, RKB commenced action No. 2 against Buck, alleging that it had paid the entire balance of the Chemical Bank loan and therefore sought a 20% contribution from him. Buck

answered and served a third-party complaint upon CTI and the RKB officers.

The parties thereafter brought various motions in Supreme Court which were heard together. Supreme Court granted defendants' motion seeking joinder of the actions and the third-party complaints. Supreme Court denied RKB's cross motion for summary judgment in action No. 2 or, alternatively, the dismissal of all counterclaims and affirmative defenses. Supreme Court granted that part of the third motion which sought the dismissal of the second cause of action in action No. 1 and denied the remainder of the relief requested.

As to the fourth motion brought by RKB, CTI and the RKB officers (hereinafter collectively referred to as plaintiffs) seeking, *inter alia,* dismissal of the third-party complaints as well as all counterclaims which purportedly seek relief under the Interstate Commerce Act (49 USC § 10761; *see also,* 49 USC § 10741) and Transportation Law § 179 (3), Supreme Court determined that defendants failed to properly plead the statutory causes of action. It therefore granted defendants leave to amend their pleadings. To the extent that the counterclaims and third-party claims sought relief for damages incurred by CTI, the court determined that aside from Buck's claims as stockholder and/or officer of CTI, the claims of the individual defendants, including Buck, should be dismissed for lack of standing. This appeal followed.

Addressing first Buck's claim that Supreme Court should have granted the dismissal of action No. 2 in which RKB sought contribution from him, we find no merit. The record before us supports Supreme Court's conclusion that due to the absence of the RKB guarantee in the record, questions of fact remain not only as to the existence of a written guarantee executed by RKB but also as to the terms and conditions thereof (*cf., Key Bank v Ryan,* 132 AD2d 220). We further find that Buck failed to proffer sufficient proof indicating the existence of an agreement among coguarantors of the CTI loan that might have affected the right of contribution among them (*see, Slutsky v Leftt,* 160 Misc 2d 959, 960-961).

We find that Buck failed to prove his contentions that there can be no claim of contribution against him due to RKB's conversion of CTI's assets worth well in excess of the outstanding balance and in contravention of Chemical Bank's security interest. Triable issues have been raised concerning the value of these assets, the use to which they were put and whether RKB actually converted any or all of such assets to the extent claimed.

Buck's further argument that action No. 2 should be dismissed due to RKB's noncompliance with Business Corporation Law § 908 (*see, Collision Plan Unlimited v Bankers' Trust Co.*, 63 NY2d 827, 831), thereby rendering RKB's alleged payment of the loan voluntary and thus extinguishing any claim against him for contribution (*see, Halpern v Rosenbloom*, 459 F Supp 1346, 1350), is unsupported. Since questions of fact exist as to whether the Chemical Bank loan was pursued in furtherance of corporate purposes, Supreme Court correctly concluded that it could not, as a matter of law, direct judgment in favor of Buck (*see, Munzer v St. Paul Fire & Mar. Ins. Co.*, 145 AD2d 193, 199).

Reviewing next Supreme Court's determination that defendants failed to sufficiently plead claims alleging a violation of the Interstate Commerce Act (49 USC § 10761; *see,* 49 USC § 10741) and Transportation Law § 179 (3), we note that the specific paragraphs of each and every pleading under review contain one virtually identical clause alleging that plaintiffs "gave RKB wrongful and unlawful offsets, rebates, discounts, different rates other than published rates, concessions and/or adjustments on services, including transportation services, rendered to RKB by CTI". Although defendants claim the language to be sufficient, even deferring to traditional rules in favor of liberal pleading (*see,* CPLR 3026), we find such language not to be "sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense" (CPLR 3013). Such conclusion is bolstered by Buck's affidavit which admittedly states that he was not aware of possible statutory violations until after the pleadings in action No. 1 were served. Although Buck's pleadings in action No. 2 were served thereafter, the pertinent language is virtually identical to the earlier pleading.

Accordingly, while dismissal would not be proper since the supporting affidavits may be used to remedy defects in the pleadings (*see, Embee Advice Establishment v Holtzmann, Wise & Shepard*, 191 AD2d 194), Supreme Court correctly permitted defendants leave to amend the pleadings to assert such statutory violations and thereafter appropriately denied summary judgment based upon triable issues of fact concerning the nature of the alleged illegal rebates. Hence, since plaintiffs cannot realistically be charged with prior notice of defendant's statutory claims given the proof in the record, we find that Supreme Court should have granted plaintiffs leave to respond

to the newly amended claims (*see*, CPLR 3025; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3025:21, at 369).

As to Supreme Court's finding that defendants did not have standing to sue in their individual capacities and that Buck may only sue as an officer and shareholder of CTI, we find that Buck has the right to bring direct claims against the RKB officers since he properly alleged a breach of an independent fiduciary duty owed to him which is independent of any duty owing to the corporation wronged (*see*, *Abrams v Donati*, 66 NY2d 951, 953; *see also*, *Lewis v Jones*, 107 AD2d 931, 932-933; *Giblin v Murphy*, 97 AD2d 668, 670, *lv dismissed* 62 NY2d 605).* As to the remaining individual defendants, we find that Supreme Court correctly dismissed only those claims and counterclaims made by or on behalf of defendants as individuals that "seek relief for damages incurred by CTI".

Cardona, P. J., Mercure, White and Spain, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted the motions of plaintiffs and third-party defendants in both actions seeking dismissal of claims and third-party claims brought by defendant and third-party plaintiff George A. Buck, Sr. that sought to impose direct liability against the individual plaintiffs and third-party defendants; said motions denied; and, as so modified, affirmed.

---

* We note that Supreme Court denied plaintiffs' motion to dismiss for lack of standing those claims brought by Buck on behalf of CTI in his capacity as an officer of CTI (*see*, Business Corporation Law § 720) and, therefore, we will not address this issue as no valid claim was dismissed.