**SOLUTIA INC., Plaintiff,**

v.

**FMC CORPORATION, Defendant.**

**No. 04 Civ. 2842(WHP).**

United States District Court,
S.D. New York.

March 29, 2005.

---

Barbara B. Edelman, Mindy Barfield, Dinsmore & Shohl LLP, Lexington, KY, for plaintiff.

Ann B. Laupheimer, Jeremy A. Rist, Blank Rome LLP, Philadelphia, PA, Craig

A. Damast, Rocco A. Cavaliere, Blank Rome LLP, New York, NY, for defendant.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

Solutia Inc. ("Solutia") brings this diversity action against FMC Corporation ("FMC"), alleging that shortcomings in FMC's technology undermined the parties' joint venture for production of purified phosphoric acid ("PPA"). Solutia contends that FMC knew of these deficiencies prior to the formation of the joint venture but did not disclose them. FMC moves to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, FMC's motion to dismiss is granted in part and denied in part.

## BACKGROUND

Solutia and FMC are publicly traded companies that produce chemicals for industrial and consumer use. (Complaint ("Compl.") ¶ 6.) Prior to their joint venture, both companies produced PPA, which is an ingredient in many foodstuffs and also has myriad agricultural and industrial applications. (Compl.¶ 7.) While Solutia produced PPA using the traditional "thermal processed" method, FMC developed a less expensive and more efficient "wet processed" method through its Spanish subsidiary, FMC Foret. (Compl.¶¶ 7, 21.)

In 1998, the parties discussed the formation of a joint venture that would combine each party's phosphorous chemicals business and mass produce wet processed PPA, among other chemicals. (Compl. ¶ 8.) Solutia alleges that throughout these discussions, "FMC claimed to have the proprietary technology and know-how necessary to permit the large scale production of wet processed PPA at a substantively competitive cost." (Compl. ¶ 9; *see* Compl. ¶ 22.)

On April 29, 1999, the parties entered into a Joint Venture Agreement (the "JVA"). (Compl.¶ 10.) The JVA required each party to contribute certain intellectual property and tangible assets to the joint venture. (Compl. Ex. A ("JVA") Art. 6.) For example, Solutia was to supply its research and production facilities. (JVA § 6.2.) The JVA required FMC to grant the joint venture a license to use its wet processed technology for use at a facility to be constructed in Conda, Idaho (the "Conda Facility"). (Compl. ¶¶ 16; JVA § 6.4.) FMC was also obligated to deliver "all necessary technology, know-how, intellectual property, and engineering drawings so that the Joint Venture can fund and construct at ... [the Conda Facility] a new plant using the PPA technology that is capable of producing up to 80,000 metric tons of food grade wet processed [PPA]" annually. (JVA § 6.4; *see* Compl. ¶ 16.) FMC warranted that "it ha[d] disclosed to [Solutia] all material facts and circumstances ... which could reasonably be likely to, in [FMC]'s commercially reasonable judgment, have a material adverse effect on" the joint venture. (JVA § 16.1(v).) After the Federal Trade Commission approved the joint venture, the parties formed Astaris, LLC ("Astaris") on April 1, 2000. (Compl.¶ 14.) Solutia and FMC each have a fifty-percent interest in Astaris and share equally in its profits and losses. (Compl. ¶ 14; JVA §§ 5.1–5.2.)

Both parties understood that the profitability of the venture hinged on utilizing FMC's wet processed technology to mass produce PPA. (Compl.¶ 17.) Solutia relied on FMC's representations concerning the viability of wet processing in deciding to contribute its $225 million phosphorous chemicals business to Astaris. (Compl.¶ 23.) Solutia claims that after the execution of the JVA and up to April 1, 2000, FMC continued to represent that its PPA technology had been successfully uti-

lized by FMC Foret and that the technology could be implemented at the Conda Facility on a much larger scale at a competitive cost. (Compl.¶¶ 20–21.)

The parties executed several additional contracts to effect the JVA. Two are relevant to this action. (Compl.¶ 18.) The first, the Asset Transfer Agreement (the "Transfer Agreement"), was entered into by FMC, Astaris and several of their subsidiaries on April 1, 2000. (Compl. Ex. C ("ATA") at 34.) In the Transfer Agreement, FMC represented to its knowledge that the PPA technology was capable of producing "up to 80,000 metric tons of food grade wet processed [PPA]" annually. (ATA § 3.14(c); Compl. ¶ 18.) The second contract, labeled an Assignment of PPA Technology Agreement (the "Assignment Agreement"), was also executed by FMC and an Astaris subsidiary on April 1, 2000. (Compl. Ex. D ("APTA") at 9.) In the Assignment Agreement, FMC covenanted that it would deliver to Astaris all the technology necessary to produce 80,000 metric tons of food grade PPA. (APTA § 6.2(a).) Each agreement expressly names Solutia as a third-party beneficiary. (APTA § 8.7; ATA § 6.5; Compl. ¶ 19.)

Solutia alleges that the Conda Facility performed well below expectations and produced only less valuable grades of phosphoric acid suitable for agricultural and industrial use. (Compl.¶ 26.) According to the Complaint, FMC's technology "failed to produce any quantity of food-grade, wet processed PPA ... result[ing] in the Conda Plant's complete inability to operate at a profitable margin." (Compl.¶ 25.) The phosphate ore in Idaho was not calcined and contained higher concentrations of metallic impurities than the Spanish ore at FMC Foret. (Compl.¶ 30.) Solutia attributes these differences in phosphate ore to the failure to transport the wet processed method from a small facility in Spain to a much larger one in Idaho. (Compl.¶ 30.) Indeed, Solutia alleges that "FMC at all times knew or should have known that converting the PPA Technology from FMC Foret's 15,000 metric ton per year operations in Huelva, Spain to the anticipated 80,000 metric ton per year operations at the Conda Plant posed serious technical problems that FMC would not be able to solve in a timely and economic way." (Compl. ¶ 27; see Compl. ¶¶ 28–31.) The Complaint alleges that FMC never disclosed its knowledge of the problems facing the Conda Plant (Compl.¶¶ 28–32, 35) and that, if it had, "Solutia would not have entered the JVA in April 1999" (Compl.¶ 33).

Solutia filed suit against FMC in Missouri state court on October 16, 2003. Shortly thereafter, Solutia filed for bankruptcy in the Southern District of New York. In February 2004, Solutia filed this action in the bankruptcy court and voluntarily dismissed the Missouri action. Thereafter, on FMC's motion, this Court withdrew the reference from the bankruptcy court and assumed jurisdiction over this action. *See Solutia Inc. v. FMC Corp.*, 04 Civ. 2842(WHP), 2004 WL 1661115 (S.D.N.Y. July 27, 2004).

The Complaint asserts seven claims against FMC. Solutia claims that FMC's failure to disclose the shortcomings of its PPA technology constituted breaches of section 16.1 of the JVA, section 3.14(c) of the Transfer Agreement and FMC's fiduciary duty, as well as negligent misrepresentation and fraud in the inducement. (Compl.¶¶ 43–55, 62–87.) Solutia also claims that FMC failed to deliver technology capable of producing 80,000 metric tons of food grade PPA to Astaris, in breach of section 6.4 of the JVA and section 6.2(a) of the Assignment Agreement. (Compl.¶¶ 38–41, 57–60.)

Solutia seeks at least $322 million in compensatory damages, lost profits and

punitive damages. (Compl.¶¶ 41, 48, 55, 60.) In the alternative, Solutia seeks rescission of the JVA and restitution for the value of the assets Solutia transferred to Astaris. (Compl.¶¶ 69, 77, 87.)

FMC moves to dismiss the Complaint on the grounds that (1) Solutia lacks standing to sue on its own behalf because the Complaint alleges injury borne directly by the joint venture; (2) Solutia's claims are premature until an accounting of Astaris occurs; (3) the fraud and negligent misrepresentation claims are precluded by the JVA's merger clause; (3) the fraud and negligent misrepresentation claims are barred to the extent they duplicate Solutia's breach of contract claims; and (5) the claims for breach of the Asset Transfer Agreement are time-barred.

## DISCUSSION

New York law governs Solutia's contract claims. (JVA ¶ 22; APTA ¶ 8.2; ATA ¶ 6.4.) As to the tort claims, FMC contends that the contractual choice-of-law provisions "demonstrate that the parties intended *all* possible claims between them related to the joint venture to be dealt with under the JVA, and thus governed by New York law." (Defendant's Memorandum in Support of Motion to Dismiss ("Def.Mem.") at 13.) Solutia resists taking a position concerning whether New York or Missouri supplies the governing law for its tort claims, but represents that there is no "distinction between New York law and Missouri law on those counts." (Transcript of Oral Argument, Oct. 14, 2004 ("Tr.") at 22.) Accordingly, this Court applies New York law to all claims.

### I. *Standard on a Motion to Dismiss*

On a motion to dismiss under Rule 12(b)(6), a court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in a plaintiff's favor. *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.

1998); *see Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (same standard on a motion to dismiss for lack of standing). A court should not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In this limited task, the issue is not whether a plaintiff will ultimately prevail on its claim, but whether the plaintiff "is entitled to offer evidence in support of the allegations in the complaint." *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 62 (2d Cir.1997).

While the court's focus is primarily on the complaint, the court may also consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000); *see San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808–09 (2d Cir.1996); *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991); *Patrick v. Allen*, 355 F.Supp.2d 704, 709 (S.D.N.Y.2005).

### II. *Standing*

FMC argues that Solutia lacks standing because Astaris suffered the direct injury. FMC contends that Solutia's injury is derivative in that it is the decreased value of its investment. Thus, the impact on Solutia is limited to its position as an Astaris shareholder. According to FMC, Solutia has standing to bring a derivative suit on behalf of Astaris but lacks standing to sue individually.

While the parties characterize their relationship as a joint venture, they formed a new corporation to conduct their purified phosphoric acid business. Once Astaris

came into being, Solutia and FMC were not only joint venturers under the JVA but shareholders in a Delaware limited liability company.

██ Under New York law, "[a]n individual shareholder has no right to bring an action in his own name and in his own behalf for a wrong committed against the corporation, even though the particular wrong may have resulted in a deprecation or destruction of the value of his corporate stock." *Fifty States Mgmt. Corp. v. Niagara Permanent Sav. & Loan Assoc.,* 58 A.D.2d 177, 179, 396 N.Y.S.2d 925, 927 (4th Dep't 1977) (citation omitted); *accord Abrams v. Donati,* 66 N.Y.2d 951, 953, 498 N.Y.S.2d 782, 489 N.E.2d 751 (1985) ("For a wrong against a corporation a shareholder has no individual cause of action, though he loses the value of his investment or incurs personal liability in an effort to maintain the solvency of the corporation."); *New Castle Siding Co. v. Wolfson,* 97 A.D.2d 501, 502, 468 N.Y.S.2d 20, 20 (2d Dep't 1983); *Paulson v. Margolis,* 234 A.D. 496, 498, 255 N.Y.S. 568, 571 (1st Dep't 1932).[1] The rule applies equally to closely held corporations as to large, publicly traded corporations. *See Wolf v. Rand,* 258 A.D.2d 401, 403, 685 N.Y.S.2d 708, 710 (1st Dep't 1999). Of course, a shareholder always has standing to sue for harm to the corporation, as long as the suit is brought derivatively, with any recovery going to the corporation. *See* N.Y. Bus. Corp. Law § 626(a). Because the harm is principally to the corporation, this rule "prevent[s] impairment of the rights of creditors of the corporation whose claims may be superior to those of the innocent shareholder." *Wolf,* 685 N.Y.S.2d at 710.

██ However, "where the plaintiff's injury is direct, the fact that [the corporation] may also have been injured and could

assert its own claims does not preclude the plaintiff from asserting its claim directly." *Excimer Assocs., Inc. v. Vision, Inc.,* 292 F.3d 134, 140 (2d Cir.2002); *see Ceribelli v. Elghanayan,* 990 F.2d 62, 63 (2d Cir.1993); *Paulson,* 255 N.Y.S. at 571; *Gen. Rubber Co. v. Benedict,* 215 N.Y. 18, 23, 109 N.E. 96 (1915) ("The wrong to the plaintiff does not cease to be remediable because it may also be a wrong to some one else."). Such a direct injury occurs, for example, if "the wrongdoer has breached a duty owed to the shareholder independent of any duty owing to the corporation wronged." *Abrams,* 66 N.Y.2d at 953, 498 N.Y.S.2d 782, 489 N.E.2d 751; *see Ceribelli,* 990 F.2d at 63–64; *Benedict v. Whitman Breed Abbott & Morgan,* 282 A.D.2d 416, 418, 722 N.Y.S.2d 586, 588 (2d Dep't 2001). The duty must derive from "circumstances independent of and extrinsic to the corporate entity." *Fifty States Mgmt.,* 396 N.Y.S.2d at 927; *see Benedict,* 722 N.Y.S.2d at 588; *New Castle Siding,* 468 N.Y.S.2d at 20.

FMC contends that, to have individual standing, a shareholder's injury must be different from the injury any other shareholder would suffer, and must be more than merely a decrease in the value of its investment. (Def. Mem. at 15–19.) None of the cases relied on by FMC, however, impose such an individualized injury requirement on a shareholder to whom the defendant violated a duty independent of the corporation. In *Paulson v. Margolis,* the First Department held that one shareholder could not sue another because the harm was to the corporation only *and* the plaintiff had not adequately alleged that the defendant owed him a separate duty. 234 A.D. at 498–99, 255 N.Y.S. 568. In fact, the court held that had plaintiff alleged such a duty, the defendant could be

---

1. New York corporate law applies in full force to limited liability companies such as Astaris.

*Weber v. King,* 110 F.Supp.2d 124, 131–32 (E.D.N.Y.2000).

liable to both the corporation and the plaintiff. 234 A.D. at 499, 255 N.Y.S. 497; *see also Goldstein v. Consol. Edison Co. of N.Y.*, 115 A.D.2d 34, 41, 499 N.Y.S.2d 47, 50 (1st Dep't 1986) ("As Con Ed has thus breached no legal duty to the Goldsteins, it cannot be held liable for the injury."). FMC also relies on *Longo v. Butler Equities II L.P.*, in which the First Department held that a partner lacked standing to sue his partners for breach of fiduciary duty because the defendants' alleged conduct directly harmed the partnership, "impacting on plaintiff only insofar as his pro-rata share was concerned, without any direct injury to plaintiff independent of the injury caused to the partnership." 278 A.D.2d 97, 98, 718 N.Y.S.2d 30, 32 (1st Dep't 2000). The court did not find that the defendants owed the plaintiff any duty other than as partners, and thus did not rule on the type of injury the plaintiff would need to have standing in such a case. *Cf. Fifty States Mgmt.*, 396 N.Y.S.2d at 927; *Benedict*, 722 N.Y.S.2d at 588.

■ Moreover, New York courts consistently hold that where an independent duty exists, a shareholder may sue on his own behalf even for the loss of value in his investment. *See Gen. Rubber*, 215 N.Y. at 22–23, 109 N.E. 96 (holding that a plaintiff shareholder could sue for the diminished value in its shares because the plaintiff sued "its own agent," who owed plaintiff an independent duty); *Benedict*, 722 N.Y.S.2d at 588 (plaintiffs had "standing to assert claims for diminution of the value of their stock ... since the wrongs alleged were not only wrongs to the corporations, but were violations of an independent fiduciary duty"). In other words, where a defendant breaches an independent duty to a shareholder that also harms the corporation, the conduct constitutes a wrong against the shareholder for which it can recover individually, even if the harm is only to the value of its investment. *Cf. Fifty States Mgmt.*, 396 N.Y.S.2d at 927

(absent independent duty, shareholder must sue derivatively "for a wrong committed against the corporation").

### A. Tort Claims

FMC argues that Solutia lacks standing to assert any of its claims because "FMC could not have injured Solutia without first injuring Astaris." (Def. Mem. at 15.) However, FMC's contention is premised on a generalization that misconstrues the nature of many of Solutia's claims, including those in tort.

FMC contends that "each count [of the Complaint] addresses a common core of allegations: by delivering to Astaris allegedly deficient PPA Technology, FMC damaged Astaris, and thus devalued Solutia's investment therein." (Def. Mem. at 15.) In fact, Solutia's breach of fiduciary duty, fraud and negligent misrepresentation claims allege that prior to the April 2000 incorporation of Astaris, FMC failed to disclose material facts concerning the capability of its PPA technology. (Compl. ¶¶ 61–87.) The adequacy of the technology actually delivered to Astaris is relevant only to the extent it reflects FMC's knowledge prior to April 1, 2000.

■ To the extent that FMC's alleged failure to disclose injured Solutia, it was as a potential investor in the joint venture, not as a shareholder. *Cf. Paulson*, 255 N.Y.S. at 570–71 (shareholder lacked standing to sue for diversion of corporate assets, which injures the corporation). Solutia argues that were it not for FMC's omissions and misrepresentations, it never would have entered into the joint venture agreement or invested in Astaris. (Compl. ¶ 33.) While the alleged harm to Astaris lies in FMC's ultimate failure to make good on its promise to deliver the contemplated technology, Solutia claims that its entire investment relied on FMC's earlier misrepresentations concerning the

true capability of its PPA technology. Thus, Solutia's injury is distinct from and independent of the corporate entity.

In this realm, courts have consistently held that a shareholder such as Solutia has standing to sue on its own behalf where it claims "that it was fraudulently induced to become a shareholder in the first place." *Lakonia Mgmt. Ltd. v. Meriwether*, 106 F.Supp.2d 540, 551 n. 21 (S.D.N.Y.2000) (internal quotation omitted); *see Glusband v. Fittin Cunningham Lauzon, Inc.*, 582 F.Supp. 145, 149 (S.D.N.Y.1984) (claims of fraudulent inducement "belong solely to the limited partners"). Solutia's tort claims—although styled in terms of negligent misrepresentation and breach of fiduciary duty as well as fraud—are fundamentally claims of fraudulent inducement. Accordingly, these claims allege a direct injury to Solutia and not corporate harm to Astaris.

Moreover, prior to the shareholder relationship in Astaris, FMC owed an independent duty arising from its joint venture relationship that also confers standing on Solutia. *See Abrams*, N.Y.2d at 953; *Benedict*, 722 N.Y.S.2d at 588; *Confidence Transp. Inc. v. Buck*, 218 A.D.2d 837, 841, 630 N.Y.S.2d 804, 808 (3d Dep't 1995) ("Buck has the right to bring direct claims against the RKB officers since he properly alleged a breach of an independent fiduciary duty owed to him which is independent of any duty owing to the corporation wronged."). "Joint adventurers, like co-partners, owe to one another, while the enterprise continues, the duty of the finest loyalty." *Meinhard v. Salmon*, 249 N.Y. 458, 463–64, 164 N.E. 545 (1928); *accord Gramercy Equities Corp. v. Dumont*, 72 N.Y.2d 560, 567, 534 N.Y.S.2d 908, 531 N.E.2d 629 (1988). The JVA memorialized the parties' status as joint venturers, each owing a fiduciary duty to the other. *See Finkelstein v. Warner Music Group*, 14 A.D.3d 415, 416, 787 N.Y.S.2d 867, 867 (1st Dep't 2005); *Daniel Perla Assocs. v. Krasdale Foods, Inc.*, 12 A.D.3d 555, 557, 786 N.Y.S.2d 75, 77 (2d Dep't 2004); *Gover v. Escudo Constr. Corp.*, 288 A.D.2d 435, 436, 733 N.Y.S.2d 894, 895 (2d Dep't 2001). Further, as the party with sole knowledge of the technology's capability, FMC owed a duty to Solutia to disclose facts "not readily available to the other party." *Ceribelli*, 990 F.2d at 64 (construing New York law); *see Talansky v. Schulman*, 2 A.D.3d 355, 360, 770 N.Y.S.2d 48, 53 (1st Dep't 2003).

FMC argues that any rights springing from a duty existing before formation of Astaris are not actionable to the extent they interfere with the rights of Astaris or its creditors. However, the Complaint alleges that FMC's failure to disclose material information caused Solutia to enter the joint venture—an injury relevant only to Solutia and pre-dating the corporation. These duties are "independent of and extrinsic to the corporate entity," *Fifty States Mgmt.*, 396 N.Y.S.2d at 927; *New Castle Siding*, 468 N.Y.S.2d at 20, and FMC's obligation to make full disclosure to Solutia did not merge into any obligation it subsequently owed to Astaris. *Cf. Sagamore Corp. v. Diamond W. Energy Corp.*, 806 F.2d 373, 378–79 (2d Cir.1986) (holding that the rights of joint venturers survive the incorporation of the joint venture only if they do not interfere with the corporation and the parties reserve those rights). Accordingly, Solutia has standing to assert claims against FMC for violations of these independent duties. *Cf. Dayton Monetary Assocs. v. Donaldson, Lufkin, & Jenrette Secs.*, No. 91 Civ.2050(LLS) et al., 1993 WL 410503, at *1 (S.D.N.Y. Oct.14, 1993) (dismissing claims because plaintiffs had not "supplied a basis for imposing a fiduciary duty on the ... defendants that would permit them to recover for injuries that are otherwise derivative in nature").

Because Solutia's tort claims allege a harm to Solutia distinct from any harm to Astaris and implicate an independent duty owed by FMC, Solutia has standing to assert those claims on its own behalf and need not proceed derivatively.

## B. *Breach of the JVA*

Solutia claims that FMC breached two separate provisions of the JVA. First, the Complaint alleges a breach of section 6.4 in that FMC "failed to deliver the technology, know-how, intellectual property and engineering drawings necessary for the Joint Venture to construct a new plant at Conda, Idaho that is capable of producing any food-grade wet processed [PPA]." (Compl.¶ 39.) Second, the Complaint alleges that FMC breached the section 16.1 warranty by failing to disclose to Solutia "that significant technical problems existed that could prevent the successful implementation and/or adaptation of its PPA Technology to the Conda Plant operations." (Compl.¶¶ 44–45.)

### 1. *Section 6.4 of the JVA*

▮ FMC contends that Solutia lacks standing to sue FMC for failing to deliver the PPA technology promised in the JVA because such a breach, if true, harmed Astaris directly and Solutia only as a shareholder thereof.

Solutia alleges that FMC's failure to deliver the promised PPA technology required Solutia "to infuse a substantial amount of additional capital." (Compl.¶ 36.) This additional contribution, however, was contractually required. (Tr. at 30.) As such, Solutia's additional expenditures do not constitute a direct injury sufficient to give Solutia standing. *See Abrams,* 66 N.Y.2d at 953, 498 N.Y.S.2d 782, 489 N.E.2d 751 (holding that a shareholder has no individual cause of action for harm to the corporation that causes the shareholder to "incur[ ] personal liability in an effort to maintain the solvency of the corporation"); *cf. Excimer Assocs.,* 292 F.3d at 140 (holding that shareholder could have injury separate from injury to the corporation if it was required to make payments "over and above that which it was contractually obligated to pay"). Solutia also claims that it was directly harmed by the inadequacy of the technology FMC delivered because Solutia had divested and transferred its entire phosphorous chemicals business to Astaris. (Compl.¶ 36.) However, Solutia's claimed injury is merely its investment in the joint venture. *See Fifty States Mgmt.,* 396 N.Y.S.2d at 927 (shareholder has no direct injury for "destruction of the value of his corporate stock"). To the extent Solutia alleges that it lost its entire investment as a result of FMC's failure to deliver the promised technology to the corporation, such an injury derives solely from Solutia's status as a shareholder of Astaris. In order for Solutia to have standing to sue for the loss if its investment, FMC must have violated an independent duty to Solutia. *See Gen. Rubber,* 215 N.Y. at 22–23, 109 N.E. 96; *Benedict,* 722 N.Y.S.2d at 588.

While the JVA created independent contractual obligations running from FMC to Solutia, many of those duties folded into FMC's later undertakings to Astaris on its incorporation. New York courts have held that a pre-incorporation contractual obligation between joint venturers survives incorporation of the joint venture only to the extent that the obligation does not "conflict with the corporation's functioning" and the rights of third-party creditors are not involved. *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.,* 309 A.D.2d 288, 300, 765 N.Y.S.2d 575, 585 (1st Dep't 2003); *Blank v. Blank,* 222 A.D.2d 851, 853, 634 N.Y.S.2d 886, 888 (3d Dep't 1995). However, FMC's failure to contribute the requisite PPA technology to Astaris is principally an injury to Astaris, which affects the

corporation's functioning and the rights of its creditors. *See Wolf,* 685 N.Y.S.2d at 710 (noting that the purpose of preventing a shareholder from suing on its own behalf for corporate harm is to protect the rights of third-party creditors). Tellingly, that same FMC obligation was embodied in the corporate documents, including the Transfer and Assignment Agreements. (*See* APTA § 3.1; ATA §§ 2.1–2.2, 2.4, 2.12(a),(d).) As such, FMC's JVA promise to deliver the requisite PPA technology to the joint venture was not just a side agreement. Rather, it was both "intended to be made to the corporation" and "made to the corporation." *Higgins v. Applebaum,* 186 A.D. 682, 686, 174 N.Y.S. 807, 810 (1st Dep't 1919); *see also Sagamore,* 806 F.2d at 379 (holding that a pre-incorporation agreement is enforceable if it " 'runs along side of the path of the corporation' without being merged into it") (quoting *Manacher v. Cent. Coal Co.,* 284 A.D. 380, 385, 131 N.Y.S.2d 671, 676 (1st Dep't 1954)). Any duty FMC owed Solutia merged with FMC's duty to Astaris and was not "extrinsic to the corporation." *See Albany Plattsburgh United Corp. v. Bell,* 307 A.D.2d 416, 420, 763 N.Y.S.2d 119, 123 (3d Dep't 2003) ("The fact that some of [plaintiff-shareholder's] allegations include references to a violation of the preincorporation agreement . . . does not, in our view, convert these claims into individual causes of action.").

Accordingly, Solutia lacks standing to sue FMC on its own behalf for breach of section 6.4 of the JVA.

2. *Section 16.1 of the JVA*

■ Through section 16.1 of the JVA, FMC warranted that, as of April 29, 1999, it had disclosed to Solutia all material facts concerning its PPA technology. (JVA § 16.1.) As discussed in connection with Solutia's tort claims, FMC's alleged failure to fully disclose to Solutia the capabilities of its PPA technology harmed Solutia directly. To this end, Solutia claims that upon entering the joint venture it divested itself of its entire phosphorous chemicals business. (Compl. ¶ 36.) This divestiture occurred prior to the incorporation of Astaris, and thus was an injury that befell Solutia before it became an Astaris shareholder. Astaris itself was harmed only indirectly. *Cf. Wolf,* 685 N.Y.S.2d at 710 (shareholder can sue only derivatively for harm to corporation).

Moreover, unlike section 6.4, section 16.1 of the JVA created a duty that survived the incorporation of the joint venture and was at all times extrinsic to the corporate entity. *See Wolfson,* 468 N.Y.S.2d at 20. In the JVA, FMC represented *to Solutia* that it had disclosed *to Solutia* all material information relevant to the joint venture's success, presumably including any facts bearing on the viability of its PPA technology. (JVA § 16.1(v).) By contrast, in the Transfer Agreement, FMC warranted *to Astaris* that the PPA technology would perform as anticipated. (ATA § 3.14(c).) Although the two covenants overlap substantively, FMC's separate warranties to Solutia and Astaris created two distinct contractual obligations, each to a different legal entity. Accordingly, FMC's duty to Solutia did not merge into the obligations it forged with Astaris.

As such, FMC's duty to Solutia remains independent of Astaris, and Solutia has standing to enforce it. *See Higgins,* 174 N.Y.S. at 810 (shareholder has standing to enforce agreement "never made . . . or intended to be made to the corporation").

C. *Breach of the Assignment and Transfer Agreements*

Through the Transfer Agreement, FMC covenanted to Astaris that it had technology capable of producing 80,000 metric tons of PPA annually. (ATA § 3.14(c).) In the Assignment Agreement, FMC represented

to Astaris that it would deliver that technology to the corporation. (APTA § 6.2.) FMC contends that Solutia lacks standing to sue FMC for breaches of the Assignment and Transfer Agreements because the alleged injuries lie with Astaris—not Solutia, and Solutia was not a party to those contracts. (Def. Mem. at 23–24.)

A breach of contract by FMC harms Astaris first and foremost because Astaris is the contracting party. *See Goldstein*, 499 N.Y.S.2d at 50 (holding that a shareholder's "ownership interest in the ... corporation does not give him an individual right to recover for breach of the corporation's contract"). Thus, for Solutia to have standing to sue on these breaches for its own account, an independent duty must run from FMC to Solutia that bears on the claims. *See Abrams*, 66 N.Y.2d at 953, 498 N.Y.S.2d 782, 489 N.E.2d 751.

■ Solutia maintains that it can properly sue for FMC's alleged breaches of the Assignment and Transfer Agreements because those contracts expressly identify Solutia as a third-party beneficiary. (Plaintiff's Memorandum in Opposition to Motion to Dismiss ("Pl.Mem.") at 13–16; *see* APTA § 8.7; ATA § 6.5.) Indeed, the promisor in a contract owes a third-party beneficiary a duty independent of its duty to the promisee, even if there is no separate performance to the third-party beneficiary. *See Genen v. Metro–North Commuter R.R.*, 261 A.D.2d 211, 211–12, 690 N.Y.S.2d 213, 215 (1st Dep't 1999) ("Hunter assumed no independent duty of care to the plaintiff solely by virtue of its snow removal contract with Metro–North; that is, plaintiff is not a third-party beneficiary of the snow removal contract between Hunter and Metro–North."); *see also Teachers Ins. & Annuity Assoc. v. Tedeschi*, 3 A.D.3d 671, 673, 771 N.Y.S.2d 238, 240 (3d Dep't 2004) (finding no duty to third-party because she was not an intended third party beneficiary).

■ Under New York law, an intended third-party beneficiary has standing to enforce an agreement entered into between others. *See State of Calif. Pub. Employees' Ret. Sys. ("CalPERS") v. Shearman & Sterling*, 95 N.Y.2d 427, 434–35, 718 N.Y.S.2d 256, 741 N.E.2d 101 (2000); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 43–46, 495 N.Y.S.2d 1, 485 N.E.2d 208 (1985); *Binghamton Masonic Temple Inc. v. City of Binghamton*, 213 A.D.2d 742, 745, 623 N.Y.S.2d 357, 360 (3d Dep't 1995). A party claiming to be an intended third-party beneficiary bears the burden of demonstrating its right to enforcement. *Strauss v. Belle Realty Co.*, 98 A.D.2d 424, 427, 469 N.Y.S.2d 948, 950 (2d Dep't 1983).

■ "A third party seeking to recover on a contract must establish that a binding contract exists between other parties; that this contract was intended for his benefit; and that the benefit to him was direct rather than incidental." *Internationale Nederlanden (U.S.) Capital Corp. v. Bankers Trust Co.*, 261 A.D.2d 117, 123, 689 N.Y.S.2d 455, 460 (1st Dep't 1999); *see Levin v. Tiber Holding Corp.*, 277 F.3d 243, 248 (2d Cir.2002). A benefit is intended rather than incidental if it is "sufficiently immediate ... to indicate the assumption by the contracting parties of a duty to compensate [the third party] if the benefit is lost." *CalPERS*, 95 N.Y.2d at 434–35, 718 N.Y.S.2d 256, 741 N.E.2d 101 (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 336, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983)); *see Fourth Ocean Putnam*, 66 N.Y.2d at 44–45, 495 N.Y.S.2d 1, 485 N.E.2d 208; *Dubroff v. Evergreen Bank, Nat'l Ass'n*, 265 A.D.2d 644, 645, 696 N.Y.S.2d 560, 562 (3d Dep't 1999) (for third-party beneficiary status, contracting parties must have intended to bestow a benefit "more than merely incidental to the benefits afforded

them and which evinces an intent to permit enforcement by that party"). That is, "the circumstances [must] indicate that the promisee intends to give the beneficiary the benefit of the promised performance" or that the promised performance is to be made directly to that party. *Fourth Ocean Putnam*, 66 N.Y.2d at 44, 495 N.Y.S.2d 1, 485 N.E.2d 208 (quoting Restatement (Second) of Contracts § 302(a)); *accord Levin*, 277 F.3d at 248. New York does not require that a third-party beneficiary receive a benefit different from that exchanged between the principal parties. *See Fourth Ocean Putnam*, 66 N.Y.2d at 45, 495 N.Y.S.2d 1, 485 N.E.2d 208; *cf. In re Enron Corp.*, 292 B.R. 507, 514 (S.D.N.Y.2002) (holding that a third-party beneficiary had standing under Texas law because the benefit it stood to receive was "distinct and separate"); *Primavera Familienstiftung v. Askin*, No. 95 Civ. 8905(RWS), 1996 WL 494904, at *17 (S.D.N.Y. Aug.30, 1996) (dismissing a third-party beneficiary's claim under Delaware law because the plaintiff "ha[d] not alleged a special injury").

■ Here, the Assignment and Transfer Agreements leave no doubt that the contracting parties (*i.e.*, FMC, Astaris and their subsidiaries) intended to invest Solutia with certain third-party rights and remedies. The Assignment Agreement explicitly states:

Except with respect to Solutia Inc., *which is a third party beneficiary of this Assignment Agreement,* nothing herein expressed or implied is intended or shall be construed to confer upon or give any person or entity other than the parties hereto and their respective successors, legal representatives and permitted assigns any rights or remedies under or by reason of this Agreement.

(APTA § 8.7 (emphasis added).) The Transfer Agreement contains a similar provision: "[N]othing contained herein shall be construed or deemed to confer any benefit or right upon any third party; *provided, however,* that Solutia shall be a third party beneficiary of this Agreement." (ATA § 6.5.) The clear implication of these provisions is that the contracting parties intended to confer rights and remedies on Solutia under the Assignment and Transfer Agreements. *See Fourth Ocean Putnam*, 66 N.Y.2d at 45, 495 N.Y.S.2d 1, 485 N.E.2d 208 (third party has right to enforce a contract that "clearly evidences an intent to permit enforcement by the third party"); *Key Int'l Mfg., Inc. v. Morse/Diesel, Inc.*, 142 A.D.2d 448, 455, 536 N.Y.S.2d 792, 797 (2d Dep't 1988) (intent to benefit third-party satisfied when parties explicitly state such intention); *cf. Port Chester Elec. Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 656, 389 N.Y.S.2d 327, 357 N.E.2d 983 (1976) (no indication that contracting parties intended to benefit third party). To read the Agreements any other way would render the third-party beneficiary provisions meaningless. *See Coppola v. Stroker*, 235 A.D.2d 536, 537, 653 N.Y.S.2d 134, 135 (2d Dep't 1997) ("[P]rinciples of contract construction require ... that every provision should be deemed to have some meaning."); *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46, 150 N.Y.S.2d 171, 133 N.E.2d 688 (1956) ("The rules of construction of contracts require us to adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect."); *accord Missionary Sisters of the Sacred Heart v. N.Y. State Div. of Hous. & Cmty. Renewal*, 283 A.D.2d 284, 288, 724 N.Y.S.2d 742, 746 (1st Dep't 2001).

■ However, mere intent to confer third-party rights is insufficient; there must be a benefit that is explicit and direct. *Burns Jackson*, 59 N.Y.2d at 336, 464 N.Y.S.2d 712, 451 N.E.2d 459. "Even when the contracting parties specifically

intend to confer benefits on a third party, not all consequential damages which flow from a breach of the contract are recoverable by the third party. The contract must evince a discernible intent to allow recovery for the specific damages to the third party that result from a breach thereof before a cause of action is stated." *Strauss*, 469 N.Y.S.2d at 950. In determining whether a third party has standing to enforce a contract, the Court must "look at the overall purpose of the transaction." *Internationale Nederlanden*, 689 N.Y.S.2d at 460; *see McClare v. Mass. Bonding & Ins. Co.*, 266 N.Y. 371, 377, 195 N.E. 15 (1935) ("No other purpose [of the agreement] appearing than to benefit the two classes of creditors named, they are to be considered beneficiaries.").

█ The Assignment and Transfer Agreements did not provide for any performance to be made directly to Solutia. *Cf. Internationale Nederlanden*, 689 N.Y.S.2d at 460; *Goodman–Marks Assocs., Inc. v. Westbury Post Assocs.*, 70 A.D.2d 145, 149, 420 N.Y.S.2d 26, 29 (2d Dep't 1979) ("As a benefit to the plaintiff was thus the direct result of the promised performance, the plaintiff is deemed an intended beneficiary thereof."). Rather, under each of the Agreements, FMC promised to deliver certain assets and rights to Astaris. (APTA § 3.1; ATA §§ 2.1–2.2, 2.4, 2.12(a),(d).) *See United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.*, 988 F.Supp. 367, 373 (S.D.N.Y. 1997) ("[I]f another besides the third party may recover, beneficiary status is negated.") (citing *Fourth Ocean*, 66 N.Y.2d at 45, 495 N.Y.S.2d 1, 485 N.E.2d 208). As a co-venturer with FMC and fifty-percent shareholder of Astaris, Solutia would benefit from FMC's satisfaction of its contractual obligations. However, a benefit

received through corporate ownership is insufficient to establish rights as a third-party beneficiary. *United Int'l Holdings*, 988 F.Supp. at 372 ("UIH has not established ... a direct benefit to the Wharf beyond that provided to any parent corporation from assets held by its wholly owned subsidiaries, and this indirect benefit is insufficient to establish third-party beneficiary status."); *Dow Corning Corp. v. Chem. Design, Inc.*, 3 F.Supp.2d 361, 366 (W.D.N.Y.1998) ("[B]enefit deriving by way of [a subsidiary]'s operating at a profit and thus generating dividends to ... its parent ... is insufficient to establish third-party beneficiary status."). There is no indication that FMC would deliver any performance directly to Solutia, or that Astaris would transfer the benefit of any performance it received to Solutia. "An incidental beneficiary is a third party who may derive benefit from the performance of a contract though he is neither the promisee nor the one to whom performance is to be rendered." *World Trade Knitting Mills, Inc. v. Lido Knitting Mills, Inc.*, 154 A.D.2d 99, 103, 551 N.Y.S.2d 930, 933 (2d Dep't 1990) (citing 2 Williston, Contracts (3d ed.) § 402). That is precisely Solutia's status.

Accordingly, Solutia lacks standing to sue individually on its own behalf for FMC's alleged breaches of the Assignment and Transfer Agreements.[2]

### III. *Need for an Accounting*

FMC contends that all of Solutia's claims are premature because an accounting of Astaris has not yet been performed. Without an accounting, FMC contends, this Court cannot determine the extent to which FMC's alleged actions affected Astaris' value, Solutia's investment or third-

---

2. Because this Court holds that Solutia lacks standing to sue for breach of the Transfer Agreement, it need not consider FMC's argument that those claims are time-barred under the agreement's two-year statute of limitations. (Def. Mem. at 34–35.)

party creditors, and whether either party has obligations to the other arising from the joint venture. (Def. Mem. at 24–28.) FMC notes that Astaris has many operations in addition to PPA processing, so that Solutia's investment in the joint venture would not have been "destroyed" by a failure of the PPA technology FMC had contributed.

New York's law governing partnerships is generally extended to joint ventures, *See Ebker v. Tan Jay Int'l Ltd.,* 741 F.Supp. 448, 470 (S.D.N.Y.1990). "While the general rule with respect to partnerships provides that partners cannot sue each other at law unless there is an accounting, prior settlement, or adjustment of the partnership affairs, a partner may maintain an action at law against a co-partner when no complex accounting is required or when only one transaction is involved which is fully closed but unadjusted." *Agrawal v. Razgaitis,* 149 A.D.2d 390, 391, 539 N.Y.S.2d 496, 497 (2d Dep't 1989) (citation omitted). Additionally, "an individual partner may vindicate a specific wrong perpetrated against him when the wrong alleged involves a partnership transaction but can be determined without an examination of the partnership accounts." *Roberts v. Astoria Med. Group,* 43 A.D.2d 138, 139, 350 N.Y.S.2d 159, 161 (1st Dep't 1973).

The claims that Solutia has standing to bring do not depend on a prior accounting. These claims assert that Solutia would not have entered the joint venture had Astaris fully disclosed the problems with its PPA technology. Rather than the profits Astaris may have lost, Solutia seeks the return of its contributions to the joint venture and consequential damages from the lost opportunity—amounts quantifiable without an accounting of Astaris. This is true even with respect to the alleged breach of the JVA warranty, section 16.1, because that breach

would have occurred as soon as FMC signed the contract knowing that it had not disclosed all material facts to Solutia. "[W]here a joint venture agreement is breached before any business is done thereunder . . ., there is no need to resort to an equitable accounting, and an action at law for damages will lie." 16 N.Y. Jur.2d Bus. Relationships § 1962; *see B.D. & F. Realty Corp. v. Lerner,* 232 A.D.2d 346, 347, 648 N.Y.S.2d 596, 597 (1st Dep't 1996); *St. James Plaza v. Notey,* 95 A.D.2d 804, 805, 463 N.Y.S.2d 523, 526 (2d Dep't 1983). If FMC is found liable, determining the amount due Solutia will not require "entering into the day to day management of the partnership." *St. James,* 463 N.Y.S.2d at 526. Instead, "the court need only determine the 'book value' of [Solutia's] interest as of the first day" of the joint venture because Solutia claims it was wrongly induced to enter into that relationship. *St. James,* 463 N.Y.S.2d at 526.

Accordingly, Solutia's surviving claims are not barred for want of a prior accounting.

## IV. *Effect of the JVA's Merger Clause*

FMC contends that the JVA's merger clause precludes Solutia's claims of fraud and negligent misrepresentation. Section 23.4(a) states that the JVA "constitutes the entire agreement between the parties pertaining to the subject matter hereof, and all prior representations, discussions and negotiations between the parties . . . pertaining to the subject matter of this Agreement are superseded." (JVA § 23.4(a).) That section incorporates by reference a letter agreement previously entered into by the parties. (JVA § 23.4(a).) The letter agreement provides: "Except for the matters expressly specified in th[e] letter or in any such formal written definitive contract, neither party

shall be entitled to rely on any statement, promise, agreement or understanding, whether oral or written ... in connection with the Possible Transaction." (Def. Mem. Ex. A: Letter Agreement, dated Nov. 18, 1998 ¶ 4.)

New York courts hold a contract fully integrated by a merger clause subject to the parole evidence rule, prohibiting the introduction of extrinsic evidence. *Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir.1993). However, even when a contract contains a merger clause, courts permit a party to introduce extrinsic evidence to establish fraud. *Mfrs. Hanover*, 7 F.3d at 315. Thus, a party to a fully integrated contract can assert a claim of fraud, unless the contract specifically disclaims reliance on the representations at issue. *Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 95, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985); *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 323, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959).

Solutia contends that the JVA only contains a general merger clause, and therefore does not bar its claims of fraud. (Pl. Mem. at 33–35.) FMC, in contrast, argues that the Letter Agreement is sufficiently specific to preclude Solutia's claims. (Tr. at 17.)

However, where the alleged misrepresentations supporting a claim of fraud arise from facts within the "peculiar knowledge" of a party, even a specific disclaimer as to reliance on those representations does not bar a fraud claim. *Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir.1998); *see Danann Realty*, 5 N.Y.2d at 322, 184 N.Y.S.2d 599, 157 N.E.2d 597; *Yurish v. Sportini*, 123 A.D.2d 760, 761–62, 507 N.Y.S.2d 234, 235 (2d Dep't 1986) ("[T]his court has repeatedly noted that allegedly fraudulent [parties] may not invoke even specific disclaimer clauses in order to preclude evidence of oral misrepresentations

if the facts allegedly misrepresented are peculiarly within [that party's] knowledge." (quotation omitted)). Although sophisticated parties can normally verify each other's representations or bargain for specific contractual warranties, the peculiar knowledge exception applies if "a party would face high costs in determining the truth or falsity" of representations. *Warner Theatre*, 149 F.3d at 136; *see Dimon Inc. v. Folium, Inc.*, 48 F.Supp.2d 359, 368 (S.D.N.Y.1999) (noting that the reasonableness of a party's reliance on statements correlates to the effort necessary to corroborate those statements).

Solutia has adequately pled reliance on representations that concern facts within the peculiar knowledge of FMC. For example, FMC's allegedly fraudulent misrepresentations concern the use of the PPA technology at FMC Foret, FMC's tests of the PPA technology on various ores and an internal FMC report regarding the efficacy of using the PPA technology at the Conda Facility. (Compl.¶¶ 20–22, 29–31.) Unlike the cases on which FMC relies, all of the alleged misrepresentations in this action concern the capability of proprietary technology, which is necessarily in the peculiar knowledge of its owner. *Cf. DynCorp v. GTE Corp.*, 215 F.Supp.2d 308, 321–22 (S.D.N.Y.2002) (plaintiff who acquiesced to view only selected materials could not claim that the defendant withheld material that was within its peculiar knowledge).

FMC contends that the peculiar knowledge exception does not apply to a negligent misrepresentation claim. (Tr. at 15.) On the contrary, the same reasoning has equal force when applied to Solutia's claim of negligent misrepresentation. Regardless of the cause of action, the information FMC withheld or misrepresented was within its peculiar knowledge, and Solutia can claim reasonable reliance on FMC's

representations to support either a fraud or negligent misrepresentation claim. *See Dimon*, 48 F.Supp.2d at 367–72 (analyzing the reasonable reliance necessary for a fraud claim and a negligent representation claim together).

Moreover, the parties were linked in a joint venture which, as discussed *supra*, infused fiduciary duties in their relationship. *See, e.g., Meinhard*, 249 N.Y. at 464, 164 N.E. 545 ("Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior."); *Finkelstein*, 787 N.Y.S.2d at 867. The attendant duty FMC owed Solutia created an independent basis for Solutia's reasonable reliance on FMC's representations. *See Prestige Foods, Inc. v. Whale Sec. Co.*, 243 A.D.2d 281, 282, 663 N.Y.S.2d 14, 15 (1st Dep't 1997) ("Nor did this conventional business relationship give rise to fiduciary duties such as might justify a claim of reliance.") Similarly, an allegation that parties are joint venturers is sufficient to demonstrate the "special relationship" requisite to sustain a negligent misrepresentation claim. *See Richbell*, 765 N.Y.S.2d at 583 (finding that pleading a joint venture establishes a fiduciary duty); *cf. Thomas v. McLaughlin*, 276 A.D.2d 440, 440, 715 N.Y.S.2d 388, 389 (1st Dep't 2000) (finding that plaintiff was bared from bringing a negligent misrepresentation claim where the pleadings failed to establish a joint venture).

Accordingly, Solutia's claims of fraud and negligent misrepresentation based on representations extraneous to the contract are not precluded by the JVA's merger clause.

## V. *Duplication of Tort and Contract Claims*

Lastly, FMC challenges Solutia's fraud and negligent misrepresentation claims on the ground that they are premised on the same allegations that underlie Solutia's breach of contract claims.

As discussed above, this Court holds that Solutia lacks standing to assert each of its breach of contract claims with the exception of its claim that FMC breached section 16.1 of the JVA by failing to disclose material information concerning its PPA technology. By its terms, section 16.1 encompasses only representations and omissions occurring prior to the date of the JVA, April 29, 1999. (JVA § 16.1.) Solutia's fraud and negligent misrepresentation claims, by contrast, implicate a much broader period, culminating on Astaris' April 1, 2000 incorporation. (Compl.¶¶ 71, 78.) Because no breach of contract claim can be stated for events occurring between April 29, 1999 and April 1, 2000, Solutia's claims for fraud and negligent misrepresentation are cognizable to the extent they depend on representations and omissions during that time period. *See Richbell*, 765 N.Y.S.2d at 589 ("[A] fraud claim may be dismissed as duplicative only as against a defendant against whom the related contract claim is viable."). However, the issue remains as to whether Solutia's claim that FMC breached section 16.1 of the JVA by making misrepresentations and omissions prior to April 29, 1999 precludes its claims of fraud and negligent misrepresentation based on those same misrepresentations and omissions.

Generally, under New York law, "[a] separate cause of action seeking damages in fraud cannot stand when the only fraud alleged relates to a breach of contract." *Gizzi v. Hall*, 300 A.D.2d 879, 880, 754 N.Y.S.2d 373, 376 (3d Dep't 2002); *see McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233, 234, 574 N.Y.S.2d 58, 59 (2d Dep't 1991); *Metro. Transp. Auth. v. Triumph Adver. Prods., Inc.*, 116 A.D.2d 526, 527, 497

N.Y.S.2d 673, 675 (1st Dep't 1986). "To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 20 (2d Cir.1996) (citations omitted). New York courts hold that a misrepresentation regarding present facts, as opposed to one reflecting an intent to perform in the future, is collateral to the contract. *See Deerfield Communications Corp. v. Chesebrough–Ponds, Inc.,* 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986) (citing *Citibank,* 66 N.Y.2d at 94, 495 N.Y.S.2d 309, 485 N.E.2d 974); *Orix Credit Alliance, Inc. v. R.E. Hable Co.,* 256 A.D.2d 114, 115, 682 N.Y.S.2d 160, 161 (1st Dep't 1998); *see also Stewart v. Jackson & Nash,* 976 F.2d 86, 88–89 (2d Cir. 1992) ("[W]here a contract or a transaction was induced by false representations, the representations and the contract are distinct and separable." (quoting 60 N.Y. Jur.2d Fraud and Deceit § 206)); *Great Earth Int'l Franchising Corp. v. Milks Dev.,* 311 F.Supp.2d 419, 427–29 (S.D.N.Y. 2004). *But see Graubard Mollen Dannett & Horowitz v. Moskovitz,* 86 N.Y.2d 112, 122, 629 N.Y.S.2d 1009, 653 N.E.2d 1179 (1995) ("A false statement of intention is sufficient to support an action for fraud, even where that statement relates to an agreement between the parties."). Indeed, a misrepresentation concerning present facts states an independent claim of fraud, even when the contract expressly warrants the accuracy of the defendant's representations. *First Bank of Ams. v. Motor Car Funding, Inc.,* 257 A.D.2d 287, 292, 690 N.Y.S.2d 17, 21 (1st Dep't 1999) ("A warranty is not a promise of perform-

ance, but a statement of present fact. Accordingly, a fraud claim can be based on a breach of contractual warranties notwithstanding the existence of a breach of contract claim.").

■■■ The gravamen of Solutia's fraud and negligent misrepresentation claims is that FMC misrepresented that it *had* technology that could be used to produce 80,-000 metric tons of wet processed, food grade PPA each year and that its *current* use demonstrated the effectiveness its technology. (Compl.¶¶ 20–22, 71–72, 78–79.) As FMC discerns, the alleged misrepresentations may be accurately characterized as concerning "whether the PPA Technology in use in Spain could be successfully adapted to Conda *in the future.*" (Defendant's Reply Memorandum in Support of Motion to Dismiss at 7.) However, even viewed in such a light, the Complaint alleges that Solutia was fraudulently induced to enter the JVA because FMC had misrepresented its then-present technological capability and concealed material information. (Compl.¶ 32, 75, 83.) *See Great Earth,* 311 F.Supp.2d at 429 ("[T]he 'present fact' exception draws its vigor not from the nature of the misrepresentation in a vacuum, but from the fact that such a misrepresentation wrongfully induced the other party to enter into the contract."). There is no allegation that FMC misrepresented its intent to perform under the JVA. Accordingly, Solutia may sue for fraud and negligent misrepresentation based on these alleged misrepresentations even though it might also recover under its breach of contract theory. *See VTech Holdings Ltd. v. Lucent Techs. Inc.,* 172 F.Supp.2d 435, 440–41 (S.D.N.Y.2001) (denying motion to dismiss a fraud claim because the claim was "based in large part on allegations that [plaintiff] was induced to enter into a contract and then complete the closing by a series of misrepresenta-

tions of present fact, rather than a series of false promises").

## CONCLUSION

For the reasons set forth above, FMC's motion to dismiss is granted in part and denied in part. Specifically, this Court dismisses Solutia's claims for breach of section 6.4 of the Joint Venture Agreement (Count I) and for breach of the Assignment and Transfer Agreements (Counts III and IV) with prejudice. FMC's motion to dismiss Solutia's claims for breach of section 16.1 of the Joint Venture Agreement (Count II), breach of fiduciary duty (Count V), negligent misrepresentation (Count VI) and fraud and fraud in the inducement (Count VII) is denied.