GOODMAN-MARKS ASSOCIATES, INC., Appellant, v WESTBURY POST ASSOCIATES et al., Defendants, and PAUL SCHMERGEL, Respondent.

Second Department, September 4, 1979

APPEARANCES OF COUNSEL

*Santemma, Costigan & Murphy, P. C. (George B. Costigan, Jr.,* of counsel), for appellant.

*Wien, Lane & Malkin (Robert C. Buff* of counsel), for respondent.

## OPINION OF THE COURT

*Per Curiam.*

In this action to recover the balance of a brokerage commission alleged to be due and owing, plaintiff appeals from so much of a judgment as dismissed his first cause of action against defendant Paul Schmergel, after a nonjury trial.

For the reasons that follow, the judgment should be reversed insofar as appealed from, plaintiff should be awarded judgment against said defendant on the first cause of action, and the action should be remitted to Special Term for further proceedings and for the entry of an appropriate amended judgment.

In 1972 defendant Paul Schmergel approached the plaintiff for assistance in obtaining financing of a condominium project to be known as the Westbury Terrace Condominium. Thereafter, on January 15, 1973, plaintiff was formally retained by the Post Orchard Corporation (of which Schmergel was the sole stockholder) to act as the broker in obtaining mortgage funds from the Bowery Savings Bank. Pursuant to the retainer agreement, plaintiff was to receive a total commission of $36,000. On February 1, 1973 plaintiff succeeded in obtaining the mortgage commitment, but was subsequently recompensed only to the extent of $19,000. The mortgage commitment provided, *inter alia,* that Post Orchard Corporation's obligation to pay brokerage commissions was to be treated as a cost of construction, and that Post Orchard would hold the bank harmless from any claims for brokerage commissions incurred in connection therewith.

On March 27, 1973 Schmergel's Post Orchard Corporation formed a partnership with defendant West Post Development Corporation under the firm name of Westbury Post Associates in order to construct the Westbury Terrace Condominium. The partnership agreement provided, *inter alia,* that "[t]he partnership hereby assumes the obligations of Post Orchard under the purchase money mortgage and commitment." Subsequently, the partnership retained Preferred Construction

Corporation (of which Schmergel was again the sole stock-holder) to act as general contractor for the project.

In 1974, Schmergel advised the principals of West Post Development Corporation that they were in need of additional funding, as "he was not going to have sufficient funds to finish the job". An audit revealed that almost $500,000 would be required to complete the project, and that "some of the funds that were paid to Preferred Construction Corp. for [the West-bury Terrace Condominium] job [had been] used on other jobs of Preferred Construction Corp." West Post Development Corporation's principal, J.D. Posillico, Inc., agreed at that time to provide sufficient funding to complete the project, but imposed three conditions thereon: (1) that Schmergel and his companies withdraw from the construction project; (2) that all of the debts incurred by Preferred Construction Corporation in connection with the Westbury Terrace Condominium be discharged; and (3) that J.D. Posillico, Inc., be indemnified against any and all other claims incurred in connection with the condominium project which might subsequently appear.

On January 15, 1975 an agreement was entered into among J.D. Posillico, Inc., Westbury Post Associates, Post Orchard Corporation and Paul Schmergel to effectuate the above objectives, pursuant to which all of the items of outstanding debt were classified into three categories. "Schedule A" of the contract purported to be "a list of all the creditors of Preferred Construction Corp. as same arises from the Westbury Condominium Project," and, as to each of the items thereon with the exception of item 8, J.D. Posillico, Inc., agreed to procure their discharge. In the next category was "any and all claims and/or liabilities whatsoever, for any creditors other than those as set forth in the enclosed Schedule [A]," and as to these Schmergel certified and guaranteed "both in his individual and representative capacity, that he and Preferred Construction Corp. will hold harmless * * * J.D. Posillico, Inc.". Finally, item 8 of Schedule A provided *in haec verba* that "Post Orchard Corp. and Paul Schmergel will pay [the] balance of [the] fee to [the plaintiff]." Thereafter, all of the creditors were in fact paid pursuant to the above agreement except for the plaintiff, and the instant action was commenced. The theory of plaintiff's cause of action against Schmergel individually is that the plaintiff is a third-party beneficiary of the January, 1975 agreement. Special Term held that while the plaintiff might otherwise be considered a

creditor beneficiary of the January, 1975 agreement, plaintiff could not recover, as it had failed to establish that the parties *intended* to benefit the plaintiff when they entered into the agreement. We disagree.

In determining plaintiff's asserted right as a third-party beneficiary, it becomes necessary to determine the intent of the contracting parties (see *Lawrence v Fox,* 20 NY 268; *Beveridge v New York El. R. R. Co.,* 112 NY 1), and in this connection for the plaintiff to recover it is imperative that it demonstrate that the covenant in issue "must have been entered into for [its] benefit, *or at least [that] such benefit must be the direct result of performance and so within the contemplation of the parties" (Durnherr v Rau,* 135 NY 219, 222 [emphasis supplied]; *Case v Case,* 203 NY 263, 267). Thus, where performance is to be rendered *directly* to a third party under the terms of an agreement, the third party is deemed an *intended* beneficiary of the covenant and is entitled to sue for its breach (see *McClare v Massachusetts Bonding & Ins. Co.,* 266 NY 371; *Flata v Healy Co.,* 289 NY 401; *Daniel-Morris Co. v Glens Falls Ind. Co.,* 308 NY 464; Calamari & Perillo, Law of Contracts [2d ed], § 17-2, p 609; 6 NY Contracts Law, § 1006).

In the case at bar, it is eminently clear that the parties intended to distinguish between the balance of the agreement, including the so-called "indemnification" arrangement, and the unique direct-payment provision employed with respect to item 8 of Schedule A. Since the parties must be presumed to have intended the natural results of their acts and promises, it follows, in the absence of any evidence to the contrary, that they must also be presumed to have intended this actual benefit to the plaintiff.

Notably, it is the intention of the promisee which is of primary importance in ascertaining whether a party is to be considered an intended beneficiary (see *Fosmire v National Sur. Co.,* 229 NY 44; *Graybar Elec. Co. v Seabord Sur. Co.,* 157 Misc 275; *McCulloch v Canadian Pacific Ry. Co.,* 53 F Supp 534; Restatement, Contracts, § 133, subd [1], pars [a], [b]; 2 Williston, Contracts [3d ed], § 356A), since it is the promisee who presumably secured the promise by furnishing the consideration therefor. The promisor, on the other hand, presumably intended to secure only the consideration for his promise and no more (see 6 NY Contracts Law, § 1005). Significantly, one of the main purposes of J.D. Posillico in entering into the

January, 1975 agreement was to secure the discharge of all the debts incurred in the construction of the Westbury Terrace Condominium and, to this end, it personally undertook to discharge all of the *known* debts incurred by Schmergel's Preferred Construction Corporation, with the sole exception of item 8 on Schedule A, to wit, the debt concededly owed the plaintiff. As to this item and this item alone, it was specifically provided that Schmergel and his Post Orchard Corporation were to secure its discharge "[by] pay[ing the] balance of [the] fee to [the plaintiff]". By way of contrast, the indemnification agreement included in the contract applied only to *unknown* (i.e., undisclosed) indebtedness.

■ Upon analyzing the agreement, it therefore becomes evident that the unique treatment accorded item 8 was intended to reflect a difference in intent, and that the manifest intent of the promisee (Posillico), as agreed to by Schmergel, was that Schmergel (and Post Orchard) would discharge that debt by direct payment to the plaintiff. Clearly, it was never the intention of Posillico to become responsible for the debt, nor was it the latter's intention to pay the debt if required to do so and then look to Schmergel for indemnification. On this particular point the contract is clear and therefore does not require interpretation. As a benefit to the plaintiff was thus the direct result of the promised performance, the plaintiff is deemed an intended beneficiary thereof and therefore entitled to maintain a cause of action for its breach (see *Durnherr v Rau,* 135 NY 219, *supra; Case v Case,* 203 NY 263, *supra;* see, also, 10 NY Jur, Contracts, § 239). Accordingly, Special Term's conclusion to the contrary cannot be sustained.

DAMIANI, J. P., RABIN and GULOTTA, JJ., concur; COHALAN, J., dissents and votes to affirm the judgment insofar as appealed from on the opinion of Mr. Justice NIEHOFF at Special Term.

Judgment of the Supreme Court, Nassau County, entered November 16, 1978, reversed insofar as appealed from, on the law, with costs, the second decretal paragraph thereof is deleted, plaintiff is awarded judgment against defendant Paul Schmergel on the first cause of action, and the action is remitted to Special Term for further proceedings and for the entry of an appropriate amended judgment in accordance with the opinion herein.