■ State of New York, Respondent, v Anton Notey et al., Appellants, et al., Defendants. — In an action to recover damages predicated upon Medicaid overpayments, defendants Anton Notey, Richard Notey, Thomas Notey, Rose Notey, South Shore Nursing Home, and Central Island Nursing Home appeal (1) from so much of an order of the Supreme Court, Nassau County (Murphy, J.), entered September 19, 1980, as granted plaintiff's motion, pursuant to CPLR 3217, to voluntarily discontinue its action without prejudice, and denied their cross motion to discontinue the action with prejudice, and (2) from so much of a further order of the same court, dated September 19, 1980, as, upon granting appellants' motion to renew, adhered to its original determination. Matter remitted to Special Term for further proceedings consistent herewith and in the interim appeals held in abeyance. Special Term is to file its report with all convenient speed. Generally, a plaintiff should be permitted to discontinue an action without prejudice, absent a showing of prejudice to the defendant (*Valladares v Valladares,* 80 AD2d 244). In this case, as in the companion case of *State of New York v St. James Nursing Home* (85 AD2d 690), plaintiff has sought to discontinue its action at an early stage in the proceedings in order to pursue recoupment remedies through administrative proceedings conducted by the New York State Department of Health. In March, 1979 Anton, Richard and Thomas Notey entered into a plea agreement with the New York State Attorney-General's office, in satisfaction of several multicount indictments (see *People v Notey,* 72 AD2d 279). In part the agreement states: "12. Dr. Anton Notey agrees that a civil suit may be brought in the appropriate state court by the State of New York against St. James Nursing Home, St. James Health Related Facility, South Shore Nursing Home, Central Island Nursing Home, Dr. Anton Notey and his partners in those nursing homes to. resolve issues affecting Medicaid reimbursement for past and future years relating to the value of certain assets and other costs as listed in the attached Schedule A." Appellants contend that by entering into the plea agreement with Anton, Richard and Thomas Notey, the State of New York agreed, as indicated in the above-quoted paragraph, to limit future attempts at recoupment to civil suit in court, thereby foregoing recoupment through administrative process. Plaintiff, the State of New York, argues that the above-quoted paragraph was only intended to indicate that the restitution made pursuant to the plea agreement did not exhaust the State's right to seek recoupment of other moneys as per a schedule attached to the agreement. In plaintiff's view the plea agreement does not bear on the question of which forum it chooses to use in seeking such recoupment. Both interpretations are plausible. The language of this particular provision of the plea agreement is not unambiguous, and the intent of the parties cannot be determined from the face of the agreement. Accordingly, the case must be remitted for a hearing and a determination as to the intent of the parties (*Kenyon v Knights Templar*

& *Masonic Mut. Aid Assn.,* 122 NY 247). Extrinsic evidence is admissible for this purpose, and the circumstances surrounding the plea agreement are subject to inquiry (*Lachs v Fidelity & Cas. Co. of N. Y.,* 306 NY 357, 364). If it is determined that it was the intent of the parties to the plea agreement that the State of New York limit itself to possible future recoupment by civil suit, then further inquiry, and a second determination, should be made as to the status of the nursing home defendants and the partners of Anton, Richard and Thomas Notey. Are they the intended beneficiaries of plaintiff's commitment to forego administrative recoupment, or are they merely incidental beneficiaries? (See *Port Chester Elec. Constr. Corp. v Atlas,* 40 NY2d 652; *Goodman-Marks Assoc. v Westbury Post Assoc.,* 70 AD2d 145.) Their status as beneficiaries must be determined in order to properly evaluate their ability to rely on the plea agreement in their own right. Further questions, such as the effect, if any, of the letter of March 15, 1980, from Anton, Richard and Thomas Notey to the purchasers of the South Shore and Central Island Nursing Homes, need not be addressed at this time. Hopkins, J. P., Damiani, Gibbons and Weinstein, JJ., concur.