**NABISCO BRANDS, INC., Plaintiff,**

v.

**GENERAL RESTORATION CO., INC.; Structural Restoration Company, Incorporated; and Tremco, Inc., Defendants.**

**No. CIV–83–1022C.**

United States District Court,
W.D. New York.

Feb. 10, 1988.

Hodgson, Russ, Andrews, Woods & Goodyear (James W. Gresens, and Robert J. Lane, Jr., of counsel), Buffalo, N.Y., for plaintiff.

McDonough Marcus Cohn & Tretter (Eli S. Cohn, of counsel), Buffalo, N.Y., for defendant General Restoration Co., Inc.

Phillips, Lytle, Hitchcock, Blaine & Huber (Edward S. Bloomberg, of counsel), Buffalo, N.Y., for defendant Tremco, Inc.

CURTIN, Chief Judge.

Defendants General Restoration Co., Inc. [General Restoration], and Tremco, Inc. [Tremco], now move for summary judgment in this case. Plaintiff Nabisco Brands, Inc. [Nabisco], opposes.

This is an action commenced by plaintiff Nabisco against defendants to recover damages incurred as a result of a claim that the material coating applied to the wheat silos at plaintiff's Niagara Falls plant pursuant to a painting contract awarded to Structural Restoration Company, Inc. [Structural Restoration][1] was defective, and that defendants misrepresented to plaintiff that the coating, known as "Cemcol," was compatible with "Hydrozo," a previously applied protective coating which had been used at plaintiff's Niagara Falls facility.

As is set out in the parties' papers, in 1970, Structural Restoration was awarded a contract to paint the wheat silos at plaintiff's Niagara Falls facility with Hydrozo. In August, 1978, Nabisco issued plans and specifications for the repainting of these same wheat silos (Item 75, Exh. A). These specifications were sent to Structural Restoration, and ultimately a proposal was presented to Nabisco which was accepted (*id.*, Exhs. C and D). After Structural Restoration was awarded the contract, General Restoration contracted with Structural

---

**1.** According to the affidavit of plaintiff's attorney, James W. Gresens, Esq., Structural Restoration was dissolved in New York on March 27, 1979, for failure to pay its franchise taxes. *See* Item 83. Structural Restoration was dissolved in Connecticut on May 30, 1980, for failure to file two successive annual reports. Item 101.

Restoration to perform all of Structural Restoration's work in accordance with Nabisco's specifications. General Restoration thereafter subcontracted the actual labor to a company called PSP Industries, Inc., which commenced the painting work in June of 1979.

Mr. Stephen Weingarten, President of General Restoration, has submitted an affidavit in support of General Restoration's summary judgment motion [Weingarten Affidavit] (Item 74). He says that, shortly after the work was commenced, it was discovered that Hydrozo was "not covering the hairline cracks and was discoloring" in three separate test applications. *Id.* at ¶ 9. Weingarten states that, about this same time, defendant Tremco heard about the Nabisco painting contract and demonstrated the use of Cemcol in a test application on plaintiff's wheat silos. *Id.* at ¶ 10.

Thereafter, Herbert L. Lind, plaintiff's senior engineer, requested that Hydrozo be used to coat the silos after he reviewed a chemist's report he had obtained (Item 75, Exhs. E and F). However, Weingarten says that "Structural Restoration could not, in good conscience, apply Hydrozo and live up to the warranties contained in its contract." Item 74, ¶ 11. It thereafter notified Nabisco that it would not apply Hydrozo if Nabisco insisted upon the contractual guarantee. Nabisco, however, insisted on a guarantee (*id.*, ¶ 12; Item 75, Exh. E), which the manufacturer Hydrozo Coating Company refused to give because it was merely an "incidental beneficiary" of that contract. Thereafter, in September of 1979, Structural Restoration was informed that Nabisco decided to use Cemcol and had retained Pittsburgh Testing Laboratories to supervise and monitor the application of the Cemcol.

After the work was completed on or about November 29, 1979, Nabisco notified Structural Restoration that certain rust stains had appeared on the silos (*id.*, Exh. H) and refused to make the final payment on the contract. In September of 1982, Nabisco notified Structural Restoration that it believed that there was a problem with the adhesion of the Cemcol product to the silos (*id.*, Exh. I). When defendants disagreed, this litigation was commenced. Plaintiff's complaint alleges five causes of action: namely, 1) breach of contract against Structural Restoration and General Restoration; 2) breach of implied or quasi-contract against General Restoration and Tremco; 3) breach of express and implied warranties against all defendants; 4) false representation by all defendants; and 5) negligent representation by all defendants (*id.*, Exh. J).

General Restoration now argues that the causes of action against it based upon privity, warranty, and misrepresentation should be dismissed. General Restoration claims that the evidence in the record makes plain that Nabisco's contract was with Structural Restoration, and therefore, the obligation to perform pursuant to contract rested squarely with the general contractor, Structural Restoration, and *not* the subcontractor, General Restoration (*id.*, Exh. M). General Restoration maintains that because there is no evidence that it was ever a subsidiary, was united in interest or was the alter-ego of Structural Restoration, Nabisco was not in privity with General Restoration such that General Restoration could be bound by the terms of the contract between Nabisco and Structural Restoration. General Restoration states that plaintiff may not recover as a third-party beneficiary of the Structural Restoration–General Restoration subcontract. *Trump–Equitable Fifth Avenue Co. v. Lord Electric Co., Inc.*, Index No. 15198–1983 (Sup.Ct.) (attached to Item 94), *aff'd*, 476 N.Y.S.2d 233, 102 A.D.2d 1020 (1st Dept.1984).[2]

---

2. Moreover, General Restoration says that even if this court were to believe that it were bound by the terms of the contract between Structural Restoration and Nabisco, the only express warranty contained in that contract was subject to a one-year limitation period which had expired before the alleged adhesion problem arose. *See* Item 75, Exh. D ¶ 9.

General Restoration also claims that the issue in this case does not involve any defect in workmanship but only the question of whether or not General Restoration breached its duty by recommending the use of Cemcol without first determining Cemcol's compatibility with the silos' undercoating. General Restoration says that Nabisco was responsible to do such testing

Plaintiff Nabisco disagrees. It argues that its breach of contract claim against General Restoration is not deficient for lack of privity. More specifically, plaintiff says that even if General Restoration is correct in asserting that it had no direct contractual relationship with Nabisco, it would still be entitled to enforce the subcontract between Structural Restoration and General Restoration as a third-party beneficiary of the subcontract. It claims that, under New York law, where parties to a contract intend to confer a benefit on a third party, such third party is an intended beneficiary of the contract with the right to enforce the contract. *See, e.g., Goodman-Marks Assoc., Inc. v. Westbury Post Assoc.,* 70 A.D.2d 145, 148, 420 N.Y.S.2d 26, 28 (2d Dept.1979); *Cauble v. Mabon Nugent & Co.,* 594 F.Supp. 985, 991 (S.D.N.Y. 1984); *N.Y. Energy Res. & Dev. Auth. v. Nuclear Fuel Services, Inc.,* 561 F.Supp. 954, 979 (W.D.N.Y.1983); *Nepco Forged Prods., Inc. v. Consolidated Edison of New York,* 99 A.D.2d 508, 470 N.Y.S.2d 680, 681 (2d Dept.1984). Plaintiff says that it is beyond dispute that the subcontract between Structural Restoration and General Restoration was intended to directly benefit Nabisco. Nabisco says that the case law cited by defendants to the contrary is inapposite.

Alternatively, plaintiff says that General Restoration is liable under the contract as an undisclosed principal. Plaintiff argues:

> Even before Nabisco awarded the painting contract to Structural, Structural and General had collaborated on the scope of the work and the submission of a bid to Nabisco.... Pursuant to the terms of their arrangement, General was to assume *all* of the obligations under the painting contract, no part of the contract was to be performed by Structural ... In addition, General was to receive nearly 90% of the contract price ($116,000 of $131,000)....

(Weingarten affidavit, ¶¶ 31–33) and that plaintiff had no right to rely on any representations made by General Restoration and Structural Restoration about the chemical properties of Cemcol.

Item 84, p. 12 (emphasis in original). Given the above, plaintiff argues that Structural Restoration acted solely as a conduit for the painting contract between Nabisco and General Restoration. *Id.* Plaintiff also notes that its position is further supported by the fact that the terms of the subcontract were negotiated between Stephen Weingarten, who was an officer of both General Restoration and Structural Restoration, and his uncle, David Weingarten, who was an officer of Structural Restoration only.

Plaintiff also alleges that General Restoration should be estopped by this court from raising lack of privity as a defense in this case because plaintiff believed that Structural was performing the painting contract. It notes that paragraph 3 of the contract prohibited subcontracting of the painting work without Nabisco's written consent (Item 75, Exh. D). It says no such consent was given here. Finally, plaintiff asserts that General Restoration created a new contract directly with Nabisco by dealing with Nabisco after Structural Restoration was dissolved in New York in March of 1979 (*cf.,* Item 83) and Connecticut in May of 1980 (*id.*).

As was succinctly stated in a recent New York State court decision, *Fourth Ocean Putnam v. Interstate Wrecking,* 108 A.D. 2d 3, 487 N.Y.S.2d 591 (2d Dept. 1985), in determining whether a party may maintain an action as a third-party beneficiary to a contract, a court must determine the intent of the parties in this regard. If it is found that the contracting parties intended the contract for the third party's direct benefit, this third party should be permitted to maintain an action as a third-party beneficiary. If no such intent can be found, the third party should be determined to be merely an incidental beneficiary with no right to enforce the particular contract. As several courts have recognized, the intention of the promisee is of primary importance in this regard because the promisee

I believe that all of General Restoration's above arguments are without merit. *See* Item 84, pp. 19–24. Therefore, its motions for summary judgment based on these arguments must be denied.

procures the promise by furnishing the consideration therefor. *Id.* 487 N.Y.S.2d at 594 (and cases cited therein).

■ Because of the close relationship between defendants Structural Restoration and General Restoration throughout the period pertinent to this case, as well as the active involvement of General Restoration during this same time, I now deny defendant General Restorations' motion for dismissal of plaintiff's causes of action against it for lack of privity. *See also* Item 75, Exh. D, ¶ 3. I believe that this determination must await development of the factual record at trial.

■ Defendant Tremco also moves for summary judgment on the claims against it. It argues that, despite plaintiff's allegations that Structural Restoration advised it that Cemcol was "compatible" with the previously applied Hydrozo and that a Tremco representative may have indicated the same several weeks earlier, the evidence makes clear that the Tremco representative's statements were nothing more than mere puffery. *See* Item 64, Deposition of Herbert L. Lind, pp. 84–85, 144–45.

Tremco also argues that because breach of warranty is a claim in contract, plaintiff cannot maintain this claim absent a showing of privity. *County of Suffolk v. Long Island Lighting Co.,* 728 F.2d 52, 63 (2d Cir.1984). It also asserts that plaintiff's negligence cause of action must be dismissed because New York law does not recognize such a claim where the only recovery sought is for economic loss. Item 82, pp. 7–9. Finally, defendant Tremco says that plaintiff's claims for fraud, quasi-contract, and unjust enrichment should be dismissed by this court.[3]

Nabisco opposes all of these motions. It says that, contrary to defendant's view,

New York courts have made plain that there is no requirement of privity in connection with a claim for breach of express warranty. *Randy Knitwear, Inc. v. American Cyanamid Co.,* 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962); *County of Chenango Indus. Dev. Agency v. Lockwood Greene Engrs., Inc.,* 114 A.D. 2d 728, 730, 494 N.Y.S.2d 832, 834 (3d Dept. 1985). *See* Item 84, pp. 25–30. In addition, plaintiff says that the New York courts have recognized that direct contacts between a plaintiff and defendant can operate as a substitute for privity. *Falker v. Chrysler Corp.,* 119 Misc.2d 375, 379, 463 N.Y.S.2d 357, 360 (N.Y.C.Civ.Ct.1983). *See also* Item 97.

Defendant Tremco's motion to dismiss plaintiff's breach of warranty claim must be denied for the present time. *Randy Knitwear, Inc. v. American Cyanamid Co., supra.* As plaintiff states in its papers, a Tremco representative made certain statements during the time pertinent to this action which may have amounted to express warranty in the context of this case. All other motions by Tremco are also denied at this time.

In summary, all of defendants' motions are denied. A telephone conference will be held in regard to this case on February 26, 1988, at 8:45 a.m. Buffalo counsel shall attend in chambers.

So ordered.

---

**3.** In Tremco's reply (Item 92), it says that there is no evidence in the record to support plaintiff's assertions that plaintiff supplied Tremco with the specifications for the painting project, or that plaintiff informed Tremco that the basic ingredient of the Hydrozo paint was an oil/wax resin, despite the fact that plaintiff possessed this information as of at least July 19, 1979. Moreover, Tremco says that plaintiff acknowledges that it possessed Tremco's product brochures which state that Cemcol should not be used in connection with oil, wax, or grease. Finally, Tremco says that contrary to plaintiff's view, General Restoration's president, Stephen Weingarten, was told by a Tremco representative that Cemcol could be used on the Nabisco silos only after Weingarten said that there was not much left of the pre-existing Hydrozo coat. *But see* Item 97.