Commissioner of the Dept. of Social Servs. of the City of N.Y. v New York-Presbyterian Hosp. (2018 NY Slip Op 05524)





Commissioner of the Dept. of Social Servs. of the City of N.Y. v New York-Presbyterian Hosp.


2018 NY Slip Op 05524


Decided on July 26, 2018


Appellate Division, First Department


Friedman, J.p., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 26, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman, J.P.
Rosalyn H. Richter
Richard T. Andrias
Judith J. Gische
Peter H. Moulton, JJ.


450714/14 4770 

[*1]Commissioner of the Department of Social Services of the City of New York, Plaintiff-Appellant,
v
New York-Presbyterian Hospital, Defendant-Respondent, C.Y.L., et al., Defendants.



Plaintiff appeals from an order of the Supreme Court, New York County (Charles E. Ramos, J.), entered September 8, 2016, which granted defendant New York-Presbyterian Hospital's (NYPH) motion to dismiss the complaint, and denied plaintiff's cross motion for summary judgment on its causes of action for breach of contact and unjust enrichment.




Zachary W. Carter, Corporation Counsel, New York (Eric Lee and Scott Shorr of counsel), for appellant.
Stuart Perry, PC, New York (Stuart S. Perry of counsel) and Solomon Law Firm, Cherry Hill, NJ (Franklin P. Solomon of the bar of the State of New Jersey and the State of Pennsylvania, admitted pro hac vice, of counsel), for respondent.



FRIEDMAN, J.P.


At issue on this appeal is an agreement settling a prior medical malpractice action against a hospital, in which the hospital agreed to "assume full responsibility for any monies which are [*2]ultimately found to be due to Medicaid in connection with" the injured patient's lengthy hospitalization. We hold, as a matter of law, that this provision may be enforced against the hospital in this action by plaintiff Commissioner of the New York City Department of Social Services (DSS), the relevant Medicaid administrator, as an intended third-party beneficiary of this aspect of the settlement agreement. We also hold that DSS's claim against the hospital is not barred by the doctrine of res judicata.
Defendant C.Y.L.'s then-18-month-old son, M.L., was being treated for a congenital condition at defendant New York-Presbyterian Hospital (NYPH) in November 2003 when he was injured, allegedly by malpractice attributable to NYPH. As a result of this incident, M.L. remained an inpatient at NYPH until his death in 2010. C.Y.L., as M.L.'s guardian and on his own behalf, commenced a malpractice action against NYPH in 2004. While M.L. was still alive, the malpractice action was settled, with court approval, pursuant to a settlement agreement, dated April 28, 2008, which provides, in pertinent part:
"NYPH agrees and stipulates that, if and when Medicaid asserts a lien or claim for return of any monies paid by Medicaid for care and treatment rendered to [M.L.] during his hospitalization that commenced on or about November 8, 2003, NYPH will assume full responsibility for any monies which are ultimately found to be due to Medicaid in connection with the aforementioned hospitalization."
The settlement documentation also includes a "hold harmless" agreement, dated April 25, 2008, containing a provision substantially identical to the above-quoted provision of the settlement agreement, and further providing that C.Y.L. would "hold [NYPH] harmless from any and all claims or liens of any nature whatsoever," except for "the potential Medicaid lien or claim referenced above."
Pursuant to the settlement agreement and the infant's compromise order entered by the court, NYPH's $6 million settlement payment was used to fund a supplemental needs trust for M.L.'s future care after his then-anticipated discharge from NYPH [FN1]. After M.L. died in March 2010, having never been discharged from NYPH, DSS (as the agency responsible for recoupment of Medicaid expenditures in New York City) received notice of the winding up of the trust, but, other than submitting a claim for reimbursement of $7,133 in payments made to providers other than NYPH, it did not participate in the winding-up proceedings [FN2]. By order entered July 14, 2010, the court approved the final accounting for the trust, the plan for payment of the trust's outstanding expenses (including DSS's claim for $7,133) and for the distribution of its residual assets, and the discharge of the trustees upon filing of proof of compliance with the order.
On or about November 17, 2010, about four months after entry of the order approving the plan for the winding up of the trust, NYPH billed the New York State Department of Health (DOH) — the agency responsible for the processing and payment of claims against Medicaid for [*3]compensation for services covered by the program — for the costs it had incurred in caring for M.L. from November 2003 until his death in March 2010. After substantial downward adjustment of the invoiced sums, DOH paid NYPH an amount in excess of $4.8 million in 2012. When the payment was brought to the attention of DSS — which, again, is the agency responsible for the recoupment of Medicaid expenditures — DSS sought reimbursement of this amount from defendant C.Y.L., and defendant BNY Mellon, N.A., the co-trustees of the supplemental needs trust and co-administrators of M.L.'s estate [FN3]. Ultimately, DSS commenced this action to recoup the funds against C.Y.L., BNY and NYPH. Against NYPH, DSS asserted causes of action for unjust enrichment and breach of contract, the latter based on the theory that DSS was an intended third-party beneficiary of the settlement agreement's provision that NYPH would "assume full responsibility for any monies which are ultimately found to be due to Medicaid[.]"
By orders entered in November 2014 and March 2015, Supreme Court dismissed the complaint in this action as against C.Y.L., and BNY based on res judicata, a determination from which DSS did not appeal [FN4]. Subsequently, by order entered in September 2016, Supreme Court granted the motion by NYPH, the sole remaining defendant, to dismiss the complaint as against it, and denied DSS's cross motion for summary judgment on its causes of action against NYPH. Supreme Court, taking the view that DSS should have raised its claims against NYPH in the proceedings to wind up the trust, granted NYPH's motion to dismiss on the ground of res judicata.
Now before us is DSS's appeal from the order granting NYPH's motion to dismiss the complaint and denying DSS's cross motion for summary judgment. Initially, we hold that Supreme Court erred in dismissing the complaint on the ground of res judicata. At the time of the winding up of the trust in 2010, Medicaid had not been billed for, and had not paid, any of NYPH's charges for the hospitalization of M.L. that DSS now seeks to recoup in this action [FN5]. Thus, the claims that DSS asserts in this action did not exist when the trust was wound up. Logically, the order approving the final accounting of the trust — the basis for NYPH's assertion of the defense of res judicata — could not preclude DSS from asserting a claim that had not yet [*4]come into being at the time the order was entered (see X-Act Contr. Corp. v Flanders, 148 AD3d 518, 518 [1st Dept 2017] [a prior action did not constitute res judicata barring suit on a claim based on wrongdoing that allegedly occurred after the prior action had been settled]).
Turning to the merits of the cause of action for breach of contract (which Supreme Court did not address), the question presented is whether DSS was an intended third-party beneficiary of the settlement agreement's provision that NYPH "will assume full responsibility for any monies . . . ultimately found to be due to Medicaid." We find that this question can be answered as a matter of law. This is also the view of both parties to this appeal, each of which urges that the terms of the settlement agreement unambiguously support the party's own position on the issue of DSS's status as a third-party beneficiary. Further, neither party, in arguing for its position, places significant reliance on parol evidence. NYPH, in particular, in its appellate argument on the third-party beneficiary issue, makes no reference at all to anything in the record other than the settlement agreement, the hold harmless agreement, and the infant's compromise order.[FN6]
As most recently articulated by the Court of Appeals, an intention of the parties to a contract to benefit a third party, thereby conferring on the third party the right to enforce the contract, will be found (apart from situations where the third party is the only party that could [*5]recover for the breach) only "when it is . . . clear from the language of the contract that there was an intent to permit enforcement by the third party'" (Dormitory Auth. of the State of N.Y. v Samson Constr. Co., 30 NY3d 704, 710 [2018], quoting Fourth Ocean Putnam Corp. v Interstate Wrecking Co., 66 NY2d 28, 45 [1985]). Thus, it is well established that a third party cannot be deemed an intended beneficiary of a contract unless "the parties' intent to benefit the third party . . . [is] apparent from the face of the contract" (LaSalle Natl. Bank v Ernst & Young, 285 AD2d 101, 108 [1st Dept 2001]; accord Perfetto v CEA Engrs., P.C., 114 AD3d 835, 836 [2d Dept 2014]; U.S. Bank N.A. v GreenPoint Mtge. Funding, Inc., 105 AD3d 639, 640 [1st Dept 2013], lv denied 22 NY3d 863 [2014]; East Coast Athletic Club, Inc. v Chicago Tit. Ins. Co., 39 AD3d 461, 463 [2d Dept 2007]; Zelber v Lewoc, 6 AD3d 1043, 1045 [3d Dept 2004]).
The provision of the settlement agreement under which NYPH agreed to "assume full responsibility" for any Medicaid claim in the settlement agreement makes it "apparent from the face of the contract" (LaSalle, 285 AD2d at 108) that the parties intended to confer a direct benefit on DSS. NYPH's "assum[ption] [of] full responsibility" for any Medicaid claim is more than a promise merely to indemnify C.Y.L. against such a claim, which would not, by itself, confer third-party beneficiary status on DSS (see e.g. Siegel Consultants, Ltd. v Nokia, Inc., 85 AD3d 654, 657 [1st Dept 2011], lv denied 18 NY3d 809 [2012]; Joseph P. Day Realty Corp. v Chera, 308 AD2d 148, 152-153 [1st Dept 2003]). Rather, the settlement agreement, by requiring NYPH to "assume full responsibility for any monies which are ultimately found to be due to Medicaid," plainly contemplates that "performance is to be rendered directly to [the] third party," a reliable indication that "the third party is deemed an intended beneficiary of the covenant and is entitled to sue for its breach" (Goodman-Marks Assoc., Inc. v Westbury Post Assoc., 70 AD2d 145, 148 [2d Dept 1979]; accord Tarrant Apparel Group v Camuto Consulting Group, Inc., 40 AD3d 556, 557 [1st Dept 2007]; Internationale Nederlanden [U.S.] Capital Corp. v Bankers Trust Co., 261 AD2d 117, 123 [1st Dept 1999]).[FN7]
The dissent's attempt to distinguish Goodman-Marks, Tarrant Apparel and International Nederlanden is not persuasive. The observation that the particular facts of those cases are dissimilar from the facts presented here does not undercut the purposes for which we cite those cases, namely, that an agreement under which a benefit is to be provided directly to a third party generally establishes an intended third-party beneficiary status [FN8]. Indeed, what essentially [*6]occurred in this case, as evidenced by the plain terms of the settlement agreement, is that NYPH agreed to act as a surety for any liability that C.Y.L. might conceivably have to reimburse Medicaid. Thus, this case presents one of the paradigmatic situations in which the intention of the parties to the contract to confer a benefit on the third party, thereby allowing a direct action by the third party against the promisor, is generally recognized (see Restatement [Second] of Contracts § 302[1][a] [a beneficiary is intended "if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary"]; id., Comment b [in a surety situation, "a direct action by beneficiary against promisor is normally appropriate to carry out the intention of promisor and promisee"]; see also Daniel-Morris Co. v Glens Falls Indem. Co., 308 NY 464, 468-469 [1955]).[FN9]
NYPH argues that any direct obligation to DSS imposed on it by the settlement agreement is triggered only when "monies . . . are ultimately found to be due to Medicaid," a condition that has not occurred, and (according to NYPH) now can never occur, since DSS's claims against C.Y.L. and BNY have been dismissed on res judicata grounds. We see no merit in this argument, as a matter of law. Under the relevant paragraph of the settlement agreement, the trigger for NYPH's obligation to "assume full responsibility for any monies . . . ultimately found to be due to Medicaid" is not the ultimate liability finding (which would render the provision a mere indemnity clause). Rather, the settlement agreement provides that NYPH's obligation to "assume full responsibility" for any liability to DSS arises "if and when Medicaid asserts a lien or claim for return of any monies paid by Medicaid for care and treatment rendered to [M.L.] during his hospitalization that commenced on or about November 8, 2003" (emphasis added). Stated otherwise, the obligation to assume liability on the claim is triggered upon DSS's assertion of the claim; it does not await the ultimate liquidation of the claim. As events transpired, DSS asserted the claim "for return of [the] monies paid by Medicaid" against C.Y.L. and BNY when it commenced this action against them (as representatives of M.L.'s estate and the trust), as well as against NYPH, in 2014. Therefore, it was the commencement of this action that triggered NYPH's obligation under the settlement agreement to assume the liability to reimburse DSS for its expenditures on the subject hospitalization, with the amount of the liability to be determined in the course of the action. While the action has been dismissed as against C.Y.L. and BNY on res judicata grounds (a determination that is not before us for review on this appeal), nothing in the settlement agreement suggests that the dismissal of the action as against C.Y.L and BNY somehow retroactively negates the assumption by NYPH of liability to DSS that went into effect upon the commencement of the action.
The dissent would have us deny DSS summary judgment on the ground that the settlement agreement is somehow ambiguous as to whether the parties thereto intended to benefit DSS. However, the dissent identifies nothing in the settlement agreement or the other settlement documents that negates the parties' otherwise apparent intention to allow DSS to enforce the "full responsibility" for Medicaid reimbursement that NYPH expressly assumed. That NYPH's obligation is triggered only "if and when Medicaid asserts a lien or claim for any monies paid by [*7]Medicaid" does not change the fact that NYPH agreed to "assume full responsibility" for any liability to DSS upon the assertion of such a lien or claim. While the dissent may be correct that it would have made more sense for the settlement agreement to include an express agreement by NYPH not to seek Medicaid reimbursement for its care of M.L. after the alleged malpractice (and it seems clear that C.Y.L. expected NYPH to forgo seeking such reimbursement), this does not negate the intent to allow a direct claim by DSS against NYPH that is apparent from the contract that the parties actually signed [FN10]. Further, as the dissent itself acknowledges, the use of the term "indemnification" in the infant's compromise order to describe NYPH's obligation to C.Y.L. does not defeat a claim of third-party beneficiary status otherwise established by the terms of the settlement agreement.
Finally, given our conclusion that DSS is entitled to prevail on its breach of contract claim, it follows that the dismissal of the cause of action for unjust enrichment — a claim that cannot be maintained with regard to subject matter governed by contract — should be affirmed.
Accordingly, the order of Supreme Court, New York County (Charles E. Ramos, J.), entered September 8, 2016, which granted defendant NYPH's motion to dismiss the complaint, and denied plaintiff DSS's cross motion for summary judgment on its causes of action for breach of contract and unjust enrichment, should be modified, on the law, to deny the motion to dismiss and to grant the cross motion insofar as it seeks summary judgment on the cause of action for breach of contract, and otherwise affirmed, with costs to DSS against NYPH.
All concur except Moulton, J. who dissents in part in an Opinion.




MOULTON, J. (dissenting in part)


I respectfully dissent from the majority's finding that plaintiff (DSS) is a third-party beneficiary of a settlement agreement as a matter of law [FN11]. In my view, this case presents the rare situation in which we cannot determine third-party beneficiary status as a matter of law. I agree, [*8]however, with the majority's res judicata analysis.
This appeal concerns the efforts of DSS to recoup $4,887,243.99 in Medicaid funds paid to New York-Presbyterian Hospital (NYPH) in 2012 in connection with the hospitalization of the infant M.L., who passed away on March 20, 2010.
In 2004, M.L.'s father sued NYPH for medical malpractice, and he settled the action in 2008. In the settlement agreement, NYPH agreed and stipulated that
"if and when Medicaid asserts a lien or claim for
return of any monies paid by Medicaid for care and
treatment rendered to [M.L.] during his hospitalization
that commenced on or about November 8, 2003, NYPH will
assume full responsibility for any monies which are
ultimately found to be due to Medicaid in connection
with the aforementioned hospitalization."
The same language appeared in an April 2008 hold harmless
agreement, which also contained language stating that M.L.'s father agreed to "defend, indemnify and hold harmless" NYPH, other defendants, and defense counsel for claims unrelated to NYPH's aforementioned assumption of responsibility.
In June 2008, Supreme Court (Abdus-Salaam, J.), approved the
settlement and the form of a supplemental needs trust in an infant's compromise order. In the order, Justice Abdus-Salaam ordered NYPH, in "full settlement of the claim herein," to 1) pay $6 million in cash and future periodic payments to the trust, M.L.'s parents, and several attorneys; 2) waive any and all hospital liens; and 3) "indemnif[y] against any and all Medicaid liens from the date of [M.L.'s] hospitalization to discharge."
Although the settlement agreement contemplated that M.L. would
likely end his hospital stay in 2008 because his family wanted to
take him home, he remained at NYPH until his death in March 2010.
A third party may sue as a beneficiary on a contract made for its benefit. However, an intent to benefit the third party must be shown, and, absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contract (see Dormitory Auth. of the State of N.Y. v Samson Constr. Co., 30 NY3d 704, 710 [2018]). A third party's right to enforce a contract also arises when the third party is the only one who could recover for the breach of contract (see Fourth Ocean Putnam Corp. v Interstate Wrecking Co., 66 NY2d 38, 45 [1985])[FN12]. Although the beneficiary's name need not be mentioned in the contract, the parties' [*9]intent to benefit the third party must be apparent from the face of the contract (LaSalle Natl. Bank v Ernst & Young, 285 AD2d 101, 108 [1st Dept 2001]; Strauss v Belle Realty Co., 98 AD2d 424, 426-427 [2d Dept 1983], affd 65 NY2d 399 [1985]). "Absent clear contractual language evincing such intent, New York courts have demonstrated a reluctance to interpret circumstances to construe such an intent" (LaSalle Natl. Bank, 285 AD2d at 108-109).
NYPH and DSS offer divergent interpretations of the settlement agreement and its conferral, vel non, of third-party beneficiary rights.
NYPH asserts that the overall purpose of the settlement agreement was to permit settlement of the medical malpractice action and that DSS has failed to demonstrate that the parties intended to confer to it any benefit (see e.g. Combined Resources Constr. v Velez Constr., 250 AD2d 378, 379 [1st Dept 1998] [provision in settlement agreement requiring defendant to make conditional settlement offers to subcontractors was "independent of the gist" of the agreement and did not confer a right on subcontractors to receive payments] [brackets and internal quotation marks omitted]). NYPH argues that the settlement agreement, read in conjunction with the hold harmless agreement and the infant compromise order, embodies an indemnification agreement between it and M.L [FN13]. Indemnity requires that there be a viable claim against the indemnified party. Because DSS failed to timely pursue its claim against the trust or M.L.'s estate, NYPH contends that any viable claim has expired. NYPH further asserts that it never agreed to return monies upon DSS's mere assertion of a claim for monies paid by Medicaid. Rather, the operative language in the settlement agreement is that NYPH's obligation arises when monies are "ultimately found to be due." No monies can be found due, NYPH maintains, as a result of DSS's failure to pursue its claims against the trust or M.L.'s estate.
DSS maintains that the broad language of the settlement agreement demonstrates that it is a third-party beneficiary. It seizes on the settlement agreement's provision that "if and when Medicaid asserts a . . . claim for return of any monies paid by Medicaid . . . NYPH will assume full responsibility for any monies which are ultimately found to be due to Medicaid" (emphasis added). DSS argues that this language is broader than an indemnification provision [FN14]. Since NYPH was paid by Medicaid, it follows that a claim for the return of such monies from NYPH would inure to DSS's benefit. The settlement agreement also does not explicitly require DSS to sue the trust or M.L.'s estate before NYPH's duty to take "full responsibility" for any monies [*10]owed Medicaid is triggered. Rather, DSS contends that once the State has determined the costs of M.L.'s hospitalization, the amount "found to be due" will have matured.
DSS's and NYPH's contrary views of DSS's rights under the settlement agreement both find some support in the language of the agreement. It is true that NYPH's agreement to assume "full responsibility" is not explicitly tied to a claim asserted against the trust or M.L.'s estate. However, NYPH agreed to assume "full responsibility" only "if and when Medicaid asserts a lien or claim for return of any monies paid by Medicaid." If the parties' intent was to benefit DSS, the settlement agreement could have accomplished that goal far more directly by simply providing that NYPH would not bill DSS in the first instance. That the settlement agreement anticipates that DSS might seek reimbursement or that DSS would benefit from a recoupment does not establish the parties' intent to confer a benefit to DSS. Because the settlement agreement is ambiguous concerning DSS's status as a third-party beneficiary, the issue cannot be decided as a matter of law. Although the issue of third-party beneficiary status is most often determined as a matter of law, we have denied summary judgment where issues of fact were raised as to the parties' intent (see Edward J. Minskoff Equities, Inc. v Crystal Window & Door Sys., Ltd., 92 AD3d 469, 469-470 [1st Dept 2012]; Paul, Weiss, Rifkind, Wharton & Garrison v Skelgas Group, 188 AD2d 398, 398-399 [1st Dept 1992]; MK W. St. Co. v Meridien Hotels, 184 AD2d 312, 313 [1st Dept 1992]; R. H. Sanbar Projects v Gruzen Partnership, 148 AD2d 316, 320 [1st Dept 1989]).[FN15]
Thus, it is my view that this appeal presents the rare situation in which we cannot decide the issue as a matter of law. Determination of the issue should await further development of the record [FN16]. The parties' legal arguments presuppose that all of the issues raised in this appeal can be decided as a matter of law. I disagree.
Moreover, the majority agrees with my view that it would have made more sense for the settlement agreement to include an express agreement by NYPH not to seek Medicaid reimbursement for M.L.'s care. Yet, this argument does not sway the majority. The fact that the agreement contemplates that NYPH could bill DSS for M.L.'s care (as opposed to contemplating a waiver of NYPH's current and future hospital bills) raises a question as to whether the parties intended to benefit DSS or benefit only themselves.
DSS's cause of action based on unjust enrichment also cannot be decided on this record. To establish a claim for unjust enrichment, also known as quasi contract, a plaintiff must show that (1) the other party was enriched, (2) at that party's expense, and (3) that "it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered" (see Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 182 [2011] [internal quotation marks and citation omitted]). Although "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter" (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388 [1987]), that rule does not obtain where, as here, there is a bona fide dispute about the meaning of a contract and its application to the dispute at issue (see Sabre Intl. Sec., Ltd. v Vulcan Capital Mgt., Inc., 95 AD3d 434, 438-439 [1st Dept 2012]; Joseph Sternberg, Inc. v Walber 36th St. Assoc., 187 AD2d 225, 227-228 [1st Dept 1993]). On the record before us, triable issues of fact exist as to whether it is
"against equity and good conscience" to permit NYPH to retain the $4.83 million it received from Medicaid for M.L.'s hospitalization.
Order, Supreme Court, New York County (Charles E. Ramos, J.), entered September 8, 2016, modified, on the law, to deny the motion to dismiss and to grant the cross motion insofar as it seeks summary judgment on the cause of action for breach of contract, and otherwise affirmed, with costs to DSS against NYPH.
Opinion by Friedman, J.P. All concur except Moulton, J. who dissents in part in an Opinion.
Friedman, J.P., Richter, Andrias, Gische, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JULY 26, 2018
CLERK



Footnotes

Footnote 1:At the time of the settlement, it had been expected that M.L. would be discharged from NYPH and that his family would continue to care for him at home. As noted, this expectation was not realized.

Footnote 2:At that point, NYPH had not billed Medicaid for the cost of any of M.L.'s hospitalization since November 8, 2003. It is undisputed that the practice with respect to hospitalized patients covered by Medicaid is for the hospital not to bill the program until the patient has been discharged or has died.

Footnote 3: It appears that the unusual situation presented by this case — in which DSS, on behalf of Medicaid, seeks to recover from NYPH the payment that Medicaid just made to that same institution — results from Medicaid's assignment of payment-making authority to one agency (DOH) and recoupment authority to a different agency (DSS).

Footnote 4: DSS also moved, in the malpractice action (over which a different justice presided), to reopen the winding up of the trust pursuant to CPLR 5015. The CPLR 5015 motion was denied, and DSS has not taken an appeal from that determination.

Footnote 5: DSS admits, however, that, at the time of M.L.'s death, Medicaid had paid $354,079.89 for his care to various providers, and that a claim for recoupment of this amount could have been presented in the winding-up proceedings. According to DSS, the amount of the lien it asserted in the winding-up proceedings was only $7,133, due to an employee's misunderstanding of the notice of the winding up of the trust.

Footnote 6: Although more than a year passed between the date of NYPH's answer and the service of its motion to dismiss, there is no indication that significant discovery has been conducted in this action, and neither party claims that additional discovery is needed. The record contains some parol evidence relevant to the interpretation of the settlement agreement, but that evidence casts little light. NYPH's moving papers include an affirmation by Brian Noonan, Esq., an attorney in NYPH's employ who was involved in negotiating the settlement of the malpractice action, but Noonan simply asserts, as a conclusion, that NYPH and
C.Y.L. "did [not] . . . agree or otherwise undertake to benefit [DSS] by entering into the settlement." Again, the portion of NYPH's appellate brief addressing the third-party beneficiary issue does not refer to Noonan's affirmation. The record also includes the affidavit by C.Y.L. and the affirmation by his counsel that were filed in the malpractice action in support of the application for approval of the settlement, but NYPH does not claim that these documents provide any support for its position. Nor does NYPH claim to find support for its position in an August 2007 letter to DSS from C.Y.L. malpractice attorney, which asked DSS to "confirm that there is no Medicaid lien . . . at this time for services rendered by [NYPH] and therefore we can proceed to a settlement without a significant lien needing to be addressed." In the absence of any illuminating extracontractual documentary evidence or witness testimony, it seems inevitable that a trial on the issue of DSS's status as an intended third-party beneficiary would be nothing more than a repetition to a factfinder of the same legal arguments concerning the meaning of the settlement agreement that the parties make to us on this appeal.

Footnote 7: While we do not disagree with NYPH's contention that
C.Y.L. was seeking to protect himself in negotiating this term of the settlement agreement, granting DSS a direct right of action against NYPH for recoupment of Medicaid expenditures served C.Y.L.'s personal interests by affording him an additional layer of protection, beyond that provided by a bare right of indemnity, against possible liability to DSS. In this regard, the infant's compromise order's indemnity provision (requiring NYPH to provide C.Y.L. with "indemnification against any and all Medicaid liens"), while not sufficient by itself to establish DSS's third-party beneficiary status, does not negate the intent to confer a direct benefit on DSS manifest from the settlement agreement's "assum[ption] [of] full responsibility" provision.

Footnote 8: Although the dissent asserts that Tarrant Apparel actually supports its position that a triable issue as to DSS's third-party beneficiary status exists in this case, that case, as the dissent acknowledges, was decided on a motion to dismiss pursuant to CPLR 3211, not on a motion for summary judgment.

Footnote 9: In addition, the relevant provision of the settlement agreement speaks of "a lien or claim for return of any monies paid by Medicaid[.]" It is undisputed that DSS is the agency charged with the duty to assert any such lien or claim.

Footnote 10: We disagree with the dissent's characterization of the settlement agreement as "contemplat[ing] that NYPH could bill [Medicaid] for M.L.'s care." While the settlement agreement does not contain an express covenant by NYPH not to bill Medicaid, NYPH's agreement to "assume full responsibility for any monies which are ultimately found to be due to Medicaid" is inconsistent with any contemplation by the parties that NYPH would bill Medicaid for the cost of M.L.'s hospitalization. Such a step would have been expected to result in a claim by DSS for reimbursement against C.Y.L. and, perforce, a claim by C.Y.L. for indemnification in the same amount against NYPH. At the time the settlement agreement was signed, the parties could not logically have contemplated that NYPH would embark on such a pointless course of conduct.

Footnote 11: Because I do not believe that DSS established its entitlement to summary judgment on its breach of contract claim based on its status as a third-party beneficiary, I do not agree with the majority that we should affirm Supreme Court's dismissal of DSS's unjust enrichment cause of action.

Footnote 12: The Restatement (Second) of Contracts § 302 (which defines intended and incidental beneficiaries) was adopted by the Court of Appeals in Fourth Ocean Putnam Corp. (66 NY2d at 44). It provides:
"(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
"(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary."

Footnote 13: NYPH points to the indemnity language in M.L.'s infant compromise order, which orders payment of the settlement amount of $6 million "plus waiver of any and all hospital liens and indemnification against any and all Medicaid liens from the date of subject hospitalization to discharge."

Footnote 14: In any event, DSS correctly notes that even if the settlement agreement is one of indemnity, that alone does not negate the possibility of a third-party beneficiary claim (see Polat v Fifty CPW Tenants Corp., 249 AD2d 163, 164 [1st Dept 1998]).

Footnote 15: The majority cites three inapposite cases to bolster the argument that the issue can be decided in DSS's favor as a matter of law (Goodman-Marks Assoc., Inc. v Westbury Post Assoc., 70 AD2d 145 [2d Dept 1979]; Tarrant Apparel Group v Camuto Consulting Group, Inc., 40 AD3d 556 [1st Dept 2007]; Internationale Nederlanden U.S. Capital Corp. v Bankers Trust Co., 261 AD2d 117 [1st Dept 1999]). In Goodman-Marks Assoc., Inc., the Second Department held that the plaintiff mortgage broker was the intended third-party beneficiary of a "unique direct-payment provision" contained in an agreement used to facilitate financing (70 AD2d at 148). Here, it cannot be said that the settlement agreement contained such an unambiguous "unique direct-payment provision." In Tarrant Apparel Group, we affirmed Supreme Court's denial of a motion to dismiss under CPLR 3211(a)(7), because the language in a license agreement "arguably" reflected that performance was to be rendered directly to the plaintiff (40 AD3d at 557). In Internationale Nederlanden (U.S.) Capital Corp., we found that the plaintiffs, as creditors, were entitled to amend the complaint to assert that they were third-party beneficiaries of a contract between a debtor in bankruptcy and the debtor's balloting agent (261 AD2d at 117, 123). We found that "the sole purpose of the [d]ebtors in retaining [the balloting agent] was to effectuate the creditors' wishes in the reorganization" (id. at 123). By contrast, in this appeal, an issue of fact exists regarding whether the specific purpose of the settlement agreement was to benefit DSS or, instead, to facilitate the settlement of the medical malpractice action and protect M.L. and his estate from a Medicaid lien (id. ["Courts should look at the overall purpose of the transaction"]).

Footnote 16:I cannot assume that further discovery would be fruitless. The Supreme Court Records On-Line Library reflects that a preliminary conference was never held. Instead, the preliminary conference was adjourned in favor of motion practice until the conference was "DISPOSED/RESULT OF MOTION."